UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KIMBERLY DOTSON and JENNIFER CONNOR,** individually, and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>**vs.**<br><br>**TZ INSURANCE SOLUTIONS, LLC d.b.a. TRANZACT**, a New Jersey Company,<br><br>        Defendant. | Case No.<br><br>Hon.:<br><br>Mag.: |

## COLLECTIVE AND CLASS ACTION
## <u>COMPLAINT AND JURY DEMAND</u>

Plaintiff, KIMBERLY DOTSON and JENNIFER CONNOR ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby brings this Class/Collective Action Complaint against Defendant TZ INSURANCE SOLUTIONS, LLC d.b.a. TRANZACT ("Defendant"), and states as follows:

## <u>INTRODUCTION</u>

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 and arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and common law.

2.     According to Defendant's website, Defendant "drive[s] sales for the top insurance brands" and "offer[s] a well-rounded suite of marketing solutions to help insurance companies stay ahead of the competition."[1]

3.     Defendant's "teams of technology professionals provide the support brands need to

---

[1] *See*, https://www.tranzact.net/what-we-do/ (last accessed on 7/10/2025).

focus on strategic efforts of their business and maximize the selling power of their agents." *Id*.

4.      To provide these services, Defendant employs remote, hourly Technical Support Specialists – Sales Agents ("Sales Agent") that provide over-the-phone support to Defendant's customers. More specifically, Sales Agents assist Defendant's customers in finding and obtaining Medicare health plan policies through the various insurance carriers that Defendant contracts with.

5.      Within the past two years, Defendant employed Plaintiffs as Sales Agents.

6.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those jobs held by Defendant's Sales Agents, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry. *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

7.      One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

8.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

9.      In this case, after hiring the Sales Agents, Defendant incorrectly and unlawfully trained and instructed them that computer bootup and shutdown activities were not compensable and akin to "drive time" or "commute time" to and from work.

10.     Given the DOL's express guidance on this issue, Defendant's violations of the FLSA were clearly willful or negligent. Either Defendant did not bother to determine whether time spent loading and logging into (or out of) computer systems was compensable, or Defendant knew the time was compensable but nonetheless failed to pay Sales Agents for this time.

11.     Moreover, recently, several circuits have confirmed the DOL's guidance on this issue that employers must pay their Sales Agents for the pre-shift time they spend booting up their computers and launching software where, like here, it is "integral and indispensable" to their duties and is thus compensable under the FLSA. *Peterson v. NelNet Diversified Sols., LLC*, 15 F.4th 1033, 1041 (10th Cir. 2021) ("The preshift activities of booting up a computer and launching software are integral and indispensable to the CCRs' principal duties of servicing student loans by communicating with borrowers over the phone and by email."); *Cadena v. Customer Connexx LLC*, 51 F.4th 831, 840 (9th Cir. 2022) ("Because Appellants cannot perform their principal duties—receiving customer calls and scheduling—without a functional computer, booting up their computers at the beginning of their shifts is integral and indispensable and therefore compensable under the FLSA.")

12.     Defendant requires its Sales Agents to routinely work a full-time schedule, plus overtime, however, Defendant does not compensate Sales Agents for all work performed.

13.     Defendant requires its Sales Agents to perform compensable work tasks off-the-clock before and after their scheduled shifts and during their unpaid meal periods.

14.     This policy results in Sales Agents not being paid for all time worked, including overtime.

15.     In the course of performing their job responsibilities, Defendant's Sales Agents use various computer networks, software programs, applications and phone systems.

16.     The time Sales Agents spend booting up and logging into or shutting down and logging out these programs and applications before, during and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the Sales Agents' work, and they cannot perform their jobs effectively without them.

17.     Defendant's Sales Agents all perform similar computer-based tasks and are required to use the same or similar computer programs, software programs, applications, and phone systems.

18.     Upon information and belief, Defendant's Sales Agents all follow the same timekeeping process, use the ADP timekeeping system, and are subject to the same relevant timekeeping and attendance policies.

19.     Plaintiffs seek to represent in this action all current and former Sales Agents that are similarly situated to each other in terms of their remote positions, job duties, pay structure and Defendant's violations of federal and state law.

20.     Defendant knew or should have known how long it takes Sales Agents to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work, but did not.

21.     Defendant knew or should have known that Sales Agents, including Plaintiffs, worked overtime hours for which they were not compensated.

22.     Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them, the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

23.    This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

24.    Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

25.    Additionally, this Court has jurisdiction over Plaintiffs claims pursuant to 28 U.S.C. § 1332 (a), diversity jurisdiction, because the amount in controversy (inclusive of statutory attorney fees) exceeds $75,000 and involves citizens of different states.

26.    Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

27.    This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

28.    Upon information and belief, Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

29.    Defendant's Sales Agents, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

30.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form

part of the same case or controversy under Article III of the United States Constitution.

31.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

32.    This Court has personal jurisdiction over Defendant because it conducts business within the state of New Jersey, is registered with the New Jersey Secretary of State and employs individuals within the state of New Jersey.

33.    This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of New Jersey, has established minimum contacts sufficient to confer jurisdiction over it and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

34.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendant is subject to the Court's personal jurisdiction.

## PARTIES

35.    Plaintiff KIMBERELY DOTSON ("Plaintiff Dotson") is a Florida citizen who worked for Defendant as a remote Sales Agent in Florida within the last two years.

36.    Defendant paid Plaintiff Dotson for her services in the form of an hourly wage, for all credited hours worked, most recently at $18.00 per hour.

37.    Plaintiff Dotson has signed a consent to join this collective action lawsuit. *See*, Exhibit 1.

38.    Plaintiff Jennifer Connor ("Plaintiff Connor") is a Tennessee citizen who worked

for Defendant as a remote Sales Agent in Tennessee within the last two years.

39.     Defendant paid Plaintiff Connors for her services in the form of an hourly wage, for all credited hours worked.

40.     Plaintiff Connors signed a consent to join this collective action lawsuit. Exhibit 2.

41.     Defendant is a New Jersey Corporation that is registered to do business in New Jersey and maintains a registered agent office in Union New Jersey, with Entity ID #0600358622.

## GENERAL ALLEGATIONS

42.      Defendant employed Plaintiffs as remote Sales Agents from Plaintiffs' home offices in Tennessee and Florida within the last two (2) years.

43.     Defendant's Sales Agents are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) remote computer based work including, but not limited to, taking in-bound calls from and making out-bound calls to individuals who need assistance related to technical issues with their computers, or with customer service related to the products and services offered by Defendant's corporate customers; (c) ensuring that calls and work are documented and accounted for in Defendant's systems; and (d) logging out of the computer software programs and applications.

44.     Sales Agents are primarily responsible for assisting the customers of Defendant in obtaining Medicare Advantage Plans through companies that Defendant contracts with like United Healthcare, Kaiser Permanente, Blue Cross Blue Shield, and Humana (among others).

45.     Sales Agents primarily field inbound calls but also make outbound calls to customers.

46.     The general nature of the responsibilities, qualifications, and method of

compensation are the same or similar for all Sales Agents.

47.     Defendant's Sales Agents are all hourly, non-exempt positions with rigid full-time schedules that require them to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) or more hours in a workweek.

48.     The full-time schedules result in Sales Agents routinely working overtime.

49.     Indeed, throughout their employment with Defendant, Plaintiffs were required to work a substantial amount of unpaid time, including unpaid overtime, as part of their roles as Sales Agents.

50.     Defendant scheduled its Sales Agents to work forty (40) hours per week and required them to be called ready or in a meeting status the moment they clocked-in for their shifts.

51.     Consequently, before each shift the cumbersome computer bootup process occurred off-the-clock and Defendant knew or should have known that the off-the-clock work was regularly occurring because it established the policies and practices at issue.

52.     At all relevant times, Defendant controlled its Sales Agents' work schedules, duties, protocols, applications, assignments, and employment conditions.

53.     Defendant was also responsible for training and continuing its Sales Agents' education in their roles. Additionally, Defendant provided Sales Agents with uniform call scripts to read from when interacting with customers.

54.     Defendant's remote Sales Agents all perform similar remote work tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

55.     These programs, applications and systems are integral and an important part of the Sales Agents' remote work, and they cannot perform their jobs without them.

56.     Defendant's Sales Agents all follow the same timekeeping process and are subject to the same relevant timekeeping and attendance policies. Plaintiffs have attended training and meetings with numerous other Sales Agents on these matters.

57.     Defendant expressly instructs and trains Sales Agents to have all of their computer networks, software programs and applications open and ready at the moment they clock in.

58.     Defendant furthermore enforces its policy of requiring all computer networks, programs and applications to be open and ready at the commencement of a Sales Agents' shift, and critically, before the Sales Agents record his or her clock-in time, through their performance metrics and adherence policies.

59.     For example, Defendant evaluated Sales Agents (in part) based on ho closely their dialer time matched their time in the timekeeping system (ADP).

60.     Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

61.     Because Sales Agents are prohibited or otherwise pressured from including all hours worked on their timecards, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

62.     Thus, the hours reflected on the Sales Agents' pay stubs are inaccurate and contrived by Defendant.

63.     In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their Sales Agents for no less than seventeen (17) minutes per day of work performed during pre-shift time and during their lunch periods.

64.     This time could easily be recorded, accounted for and paid, but for Defendant's

choice not to credit such time as time worked.

### A.    Pre-Shift Off-the-Clock Work

65.    In addition to their regularly scheduled shifts, and as mentioned above, Defendant's remote Sales Agents perform pre-shift work tasks for which they are uncompensated.

66.    Pursuant to Defendant's policies, training and direction, Defendant's remote Sales Agents are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

67.    For Sales Agents the pre-shift startup and login process takes substantial time on a daily basis with said time averaging ten (10) minutes to fifteen (15) minutes per day, and the tasks can take longer if Sales Agents experience technical problems with the computer, software, and/or applications.

68.    Prior to the commencement of each scheduled shift, Plaintiffs, as well as the other Sales Agents, were required to complete the following tasks or tasks substantially similar to the tasks below:

    a.  Turn on their computer;
    b.  Log-into Windows using a username and password;
    c.  Log-into Defendant's virtual private network (VPN) and complete the dual authentication process;
    d.  Load and Log-into Genesys (the dialer) with username and password;
    e.  Log-into CUY (to obtain leads);
    f.  Load and Log-into Sunfire with username and password (to document calls);
    g.  Log-into Microsoft Teams up[2] (to communicate with team members and supervisors);
    h.  Open insurance carrier websites (Humana, BCBS, United Health Care, Kaiser Permanente, etc.)
    i.  Log-into Outlook (email) and check emails with work instructions for the day; and
    j.  Log-into ADP (timekeeping system) and clock-in.

---

[2] Defendant required Sales Agents to be on camera.

69.     The aforementioned tasks are an integral and essential aspect of the Sales Agents' job duties and responsibilities, as Sales Agents must have all of the above-mentioned computer programs, systems, and applications up and running on their computers in order to be prepared to accept incoming calls.

70.     Yet, Defendant fails to compensate Sales Agents for the computer boot up tasks.

71.     As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay Sales Agents for no less than ten (10) minutes per day of work performed in connection with the above pre-shift activities and all Sales Agents have been damaged by virtue of Defendant's failure to pay for these compensable work tasks.

### B.     Meal-Period Off-the-Clock Work

72.     Defendant provides their Sales Agents with a one half hour (30 minute) unpaid lunch break per shift.

73.     In reality, Defendant routinely requires Sales Agents to perform work during their unpaid lunch breaks.

74.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

75.     Defendant does not provide Sales Agents with a bona fide meal period because its

policies and procedures require Sales Agents to return from their lunch early to perform at least part of the boot up process outlined above.

76.     Many of the programs used by Sales Agents, including the VPN, would automatically log Sales Agents out of their computer systems if they remained idle for too long. As such, this required Sales Agents to return from their lunches early to log back into programs that they were automatically logged out of during their lunch breaks.

77.     Additionally, Defendant required Sales Agents to review emails with work instructions and special promotions before clocking back in and resuming calls.

78.     Sales Agents spend approximately four (4) to five (5) minutes performing this work during their unpaid meal breaks on most days.

79.     Defendant's management is aware that Plaintiffs and other Sales Agents perform these tasks off the clock, and could have paid Sales Agents for this time, but did not.

### C.     Post-Shift Off-the-Clock Work

80.     Pursuant to Defendant's policies, training and direction, Defendant's Sales Agents are required at the end of each shift to securely log out of the essential computer software programs and applications utilized during their shifts.

81.     Additionally, given Defendant's schedule adherence and performance metrics, Sales Agents are also required to complete call notes after clocking out at the end of their shifts.

82.     The shutdown and logout process (including the completion of call notes), requires another three (3) to five (5) minutes of off the clock work per shift.

83.     Pursuant to Defendant's policies, training and direction, Plaintiffs and the other Sales Agents are not allowed begin the shutdown and logout process until their scheduled shift ends and they complete their last call.

84.    Defendant did not compensate Sales Agents for all the time spent shutting down and logging out of their essential work systems.

85.    The unpaid off-the-clock work performed after each shift by Plaintiffs and all other Sales Agents directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Sales Agents.

### D.    Exemplary Pay-Period to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies

86.    An example of a specific pay period where Defendant failed to pay Plaintiff Dotson all overtime due for hours worked as a Sales Agent in excess of forty (40) hours, as mandated by the FLSA, includes the following:

### Pay Period of 01/19/25 to 02/01/25

- Plaintiff Dotson was paid at a rate of $18.00 per hour for the straight time hours Defendant credited her as having worked and $27.00 for the overtime hours Defendant credited her as having worked.

- With unpaid pre-shift, meal-period, and post-shift time of no less than seventeen (17) minutes per shift, at five shifts per week, Plaintiff should have been paid an additional eighty-five (85) minutes at her overtime rate of $27.00 per hour during the overtime workweek.

**Exhibit 3**, Exemplary Pay Statement.

87.    The off-the-clock hours at issue herein constitute unpaid overtime hours worked in virtually all pay periods.

### E.    Defendant Benefitted From the Uncompensated Off-the-Clock Work

88.    At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiffs and similarly situated employees in connection with the above-described pre-shift and meal-period activities performed by Sales Agents.

89.    At all relevant times, Defendant controlled the work schedules, duties, protocols,

applications, assignments and employment conditions of their Sales Agents.

90.    At all relevant times, Defendant was able to track the amount of time Sales Agents spent in connection with the pre-shift, meal-period and post-shift activities.

91.    Defendant failed to do so and failed to compensate Sales Agents for the off-the-clock work they performed setting up their computers.

92.    At all relevant times, remote Sales Agents were non-exempt hourly employees, subject to the requirements and protections of the FLSA.

93.    At all relevant times, Defendant used their attendance, adherence and timekeeping policies against the Sales Agents in order to pressure them into performing the pre-shift and meal-period off-the-clock work.

94.    Defendant expressly trained and instructed Sales Agents to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to perform their work duties (i.e., were "phone ready") the moment their shifts began.

95.    At all relevant times, Defendant's policies and practices deprived Sales Agents of wages owed for the pre-shift and meal-period activities they performed.

96.    Because Defendant's Sales Agents typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

97.    Defendant knew or should have known that the time spent by Sales Agents in connection with the pre-shift, meal-period and post-shift activities was compensable under the law.

98.    In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

99.    Despite knowing Sales Agents performed work before and during their unpaid meal

periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered or permitted it to happen.

100.     Unpaid overtime wages related to the off-the-clock work described herein are owed to Sales Agents at the FLSA mandated overtime premium of one and one-half their regular hourly rate because Sales Agents regularly worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

101.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former remote hourly-paid Technical Support Specialists – Sales Agents ("Sales Agents") who worked for Defendant at any time during the three years preceding the filing of the complaint through judgment*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

102.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated Sales Agents.

103.     Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid all premium overtime compensation when they worked beyond forty (40) hours in a workweek, as explained herein.

104.     Defendant assigned and/or was aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

105.     As part of their regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a.   Willfully failing to pay their Sales Agents, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

b.   Prohibiting or pressuring Plaintiffs and the FLSA Collective to underreport hours worked; and

c.   Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

106.   Defendant is aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

107.   Indeed, in light of the DOL's guidance (cited above) and the multitude of courts that have held computer boot up time is compensable, no legitimate argument can be made that Defendant's violation of the FLSA was not willful, or at a minimum, reckless.

108.   Defendant's unlawful conduct has been widespread, repeated and consistent.

109.   A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

110.   The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

111.   The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location and rate of pay.

112.   The key issue – the Defendant's failure to pay Sales Agents for pre-shift and mid-shift time loading and logging into essential computer systems – does not vary substantially among

16

the proposed FLSA Collective members.

113.    Many similarly situated current and former Sales Agents have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

114.    Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

115.    Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

116.    Plaintiff estimates that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

117.    The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

118.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of:

> *All current and former remote hourly-paid Technical Support Specialists – Sales Agents ("Sales Agents") who worked for Defendant at any time during the three years preceding the filing of the complaint through judgment*

(hereinafter referred to as the "Rule 23 Class"). Plaintiffs reserve the right to amend the putative class definition if necessary.

119.    The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical.  Plaintiffs reasonably estimate there are hundreds of Rule 23 Class members.  Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

120.    There is a well-defined community of interest among Rule 23 members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

      a.    Whether Defendant's failure to pay the Rule 23 Class members for all hours worked at their agreed upon rate constitutes a breach of contract.

      b.    Whether, if no contract exists between the parties, Defendant was unjustly enriched by virtue of its policies and practices with respect to the Rule 23 Class members' compensation and the failure to pay for all hours worked at the agreed upon rate.

121.    Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Class members.

122.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

123.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

124.     This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

125.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

126.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

<u>**COUNT I**</u>
<u>**(29 U.S.C. § 216(b) Collective Action)**</u>
<u>**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**</u>
<u>**FAILURE TO PAY OVERTIME WAGES**</u>

127.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

128.     At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

129.     At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

130.     Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

131.     Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

132.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

133.    At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform off-the-clock work every shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

134.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

135.    Defendant's violations of the FLSA were knowing and willful.

136.    Defendant knew or could have determined how long it takes its Sales Agents to perform their off-the-clock work.

137.    Further, Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for these work activities, but did not.

138.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

### COUNT II
**(Rule 23 Class Action)**
**BREACH OF CONTRACT**

139.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

140.    This Count applies only to workweeks where the FLSA's overtime protections are inapplicable (less than 40 hours).

141.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Class member to pay each Sales Agent for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Class members performed on Defendant's behalf.

142.    Defendant's contractual promises to pay Plaintiffs and each Rule 23 Class member's applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiffs and the Rule 23 Class members.

143.    Upon information and belief, each Rule 23 Class member, including Plaintiffs, has an hourly rate of approximately $18.00 per hour.

144.    Plaintiffs and every other Rule 23 Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with unlawful time rounding policy and practices, described herein.

145.    By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Class.

146.    On occasion, Rule 23 Class members missed time from work causing them to work under 40 hours in a given week.

147.    To the extent there is no other state law remedy available, Plaintiffs and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40

hours per week.

148.    As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and every other member of the Rule 23 Class have been damaged (to the extent there is no other state law remedy) in an amount to be determined at trial.

**COUNT III**
**(Rule 23 Class Action)**
**UNJUST ENRICHMENT**

149.    Plaintiffs incorporate by reference all previous paragraphs herein except for those paragraphs, sentences, or averments that allege or imply that an enforceable contract for the payment of wages exists between Plaintiffs and Defendant or the Rule 23 Class Members and Defendant.

150.    This Count is pled in the alternative to Count II, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3) in the event it is determined that no employment contract existed between Plaintiffs and Defendant as alleged in Count II. In other words, to the extent that this Court ultimately finds that no contract provision or agreement expressly governs the claims arising from the allegations in this Complaint, Defendant is nonetheless liable for unjustly enriching itself at Plaintiffs' and the Rule 23 Class members' expense.

151.    This Count applies only to workweeks where the FLSA's overtime protections are inapplicable (less than 40 hours).

152.    Defendant benefited from the unpaid work performed by Plaintiffs and the Rule 23 Class prior to the start of their shifts and after their shifts. Additionally, Defendant benefited by failing to pay their employees at the legal and applicable wage rates set by state and/or federal law, thereby failing to pay all minimum wages and overtime wages in compliance with the law.

153.    Defendant was aware or should have been aware that it was receiving the benefit

of this unpaid work at the time the work was being performed and accepted and retained that benefit without paying fair compensation for the same.

154.    Defendant's acceptance and retention of the benefit of Plaintiffs and the Rule 23 Class members' unpaid labor was inequitable and resulted in Defendant being unjustly enriched.

155.    As a direct and proximate result of Defendant's actions, and to the extent there is no other state law remedy available, Plaintiffs and every other Rule 23 Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, on behalf of the putative FLSA Collective, and on behalf of the Rule 23 Class, request judgment as follows:

a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims for common law breach of contract and unjust enrichment (Counts II and III);

c.    Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective action members and the Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class and Collective members of their rights by law to join and participate in this lawsuit;

d.    Designating Plaintiffs as the representatives of the FLSA collective action and the Rule 23 Class action, and undersigned counsel as Class and Collective counsel for the same;

e.    Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

f.    Declaring Defendant's violation of the FLSA was willful;

g.    Declaring Defendant breached its contracts with Plaintiffs and the Rule 23 Class, as cited herein;

h.  Declaring Defendant was unjustly enriched, as cited herein;

i.  Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the Collective action and the Rule 23 Class the full amount of damages and liquidated damages available by law;

j.  Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

k.  Awarding other pre- and post-judgment interest to Plaintiffs on these damages; and

l.  Awarding such other and further relief as this Court deems appropriate.

## <u>JURY DEMAND</u>

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: July 15, 2025                Respectfully Submitted,

**ASH LAW, PLLC**
Charles R. Ash, IV (P73877) (*PHV forthcoming*)
43000 W. 9 Mile Rd., Ste. 301
Novi, MI 48375
(833) NWHLPAY or (833) 694-5729
cash@nationalwagelaw.com

**RODRIGUEZ LAW PLC**
Oscar Rodriguez (P73413) (*PHV forthcoming*)
402 W. Liberty St.
Ann Arbor, MI 48103
(734) 662-4426
oscar@orodlaw.com

**BROWN, LLC**

*/s/ Nicholas Conlon*
Nicholas Conlon
Brown, LLC
111 Town Square Place #400
Jersey City, New Jersey 07310
(201) 630-0000
nicholasconlon@jtblawgroup.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*/s/ Nicholas Conlon*
Nicolas Conlon