UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KIMBERLY DOTSON, JENNIFER CONNOR, and AMANDA MCCONNELL,** individually, and on behalf of others similarly situated, | Case No. 2:25-cv-13323-BRM-MAH |
| | Hon.: Brian R. Martinotti |
| Plaintiffs, | Mag.: Michael A. Hammer |
| vs. | |
| **TZ INSURANCE SOLUTIONS, LLC d.b.a. TRANZACT**, a New Jersey Company, | |
| Defendant. | |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION PURSUANT TO 29 U.S.C. 216(b)**

## <u>TABLE OF AUTHORITIES</u>

*Adams v. QVC, Inc.,*
   *2021 WL 5906242 (E.D. Pa. Dec. 14, 2021)* .................................................................. 22

*Aquilino v. Home Depot, U.S.A., Inc.,*
   *2011 WL 564039 (D.N.J. Feb. 15, 2011)* ........................................................................ 2

*Aquillino v. The Home Depot,*
   *2006 WL 2583563 (D.N.J. Sept. 7, 2006* ................................................................... 13,19

*Bamgbose v. Delta-T Grp., Inc.,*
   *684 F. Supp. 2d 660 (E.D. Pa. 2010)* ........................................................................... 19

*Belt v. P.F. Chang's China Bistro, Inc.,*
   *2020 WL 3829026 (E.D. Pa. July 8, 2020), petition denied, 2022 WL 1746841 (3d Cir.*
   *Jan. 12, 2022)* ....................................................................................................... 26, 29

*Bishop v. AT & T Corp.,*
   *256 F.R.D. 503 (W.D. Pa. 2009)* ............................................................................ 20, 21

*Bland v. PNC Bank, N.A.,*
   *2015 WL 7587365 (W.D. Pa. Nov. 25, 2015)* ............................................................. 26

*Bowser v. Empyrean Servs., LLC,*
   *324 F.R.D. 346 (W.D. Pa. 2018)* ................................................................................ 19

*Brown v. Money Tree Mortgage, Inc.,*
   *222 F.R.D. 676 (D. Kan. 2004)* .................................................................................. 20

*Camper v. Home Quality Mgmt., Inc.,*
   *200 F.R.D. 516 (D. Md. 2000)* ................................................................................... 20

*Carr v. Flowers Foods, Inc.,*
   *2019 WL 2027299 (E.D. Pa. May 7, 2019)* ................................................................ 22

*Chao v. Gotham Registry, Inc.,*
   *514 F.3d 280 (2d Cir. 2008)* ...................................................................................... 18

*Clark v. Intelenet Am., LLC,*
   *2020 WL 831127 (D.N.J. Feb. 19, 2020)* ................................................................... 22

*Davis v. Dynata, LLC,*
   *2023 WL 6216809 (D. Conn. Sept. 25, 2023)* ............................................................ 25

*Depalma v. Scotts Co. LLC,*
   *2016 WL 7206151 (D.N.J. Mar. 31, 2016))* ............................................................... 10

*Dyson v. Stuart Petroleum Testers, Inc.,*
   *308 F.R.D. 510 (W.D. Tex. 2015)* .............................................................................. 27

*Fogg v. Clean Harbors Env'tl Servs., Inc.,*
   *2023 WL 1794836 (D.N.J. Feb. 7, 2023)* ................................................................... 29

*Fulton v. Capital Mgmt. Servs., L.P.,*
   *2025 WL 353904 (W.D. Pa. Jan. 31, 2025)* ............................................................... 21

*Garcia v. Nunn,*
   *2016 WL 1169560 (E.D. Pa. Mar. 25, 2016* ............................................................... 10

*Garcia v. Vertical Screen, Inc.,*
   *580 F. Supp. 3d 79 (E.D. Pa. 2022)* ........................................................................... 17

*Genesis HealthCare Corp. v. Symczyk,*
*133 S. Ct. 1523 (2013)* .................................................................................... 8, 9, 12, 25

*Gilbertson v. J. Givoo Consultants I, Inc.,*

*2021 WL 689114 (D.N.J. Feb. 23, 2021)* ................................................................... 29

*Goodman v. Burlington Coat Factory,*
*2012 WL 5944000 (D.N.J. Nov. 20, 2012)* ............................................................... 10

*Hagans v. Nat'l Mentor Healthcare, Inc.,*
*2023 WL 2554159 (D.N.J. Mar. 17, 2023)* ......................................................... 11, 13

*Halle v. W. Penn Allegheny Health Sys. Inc.,*
*842 F.3d 215 (3d Cir. 2016)* ......................................................................... 9, 10, 11

*Harrison v. Enterprise Rent-A-Car Co.,*
*1998 WL 422169 (M.D. Fla. July 1, 1998)* .............................................................. 21

*Harris v. Performance Transp., LLC,*
*2015 WL 1257404 (M.D. Fla. Mar. 18, 2015)* .......................................................... 29

*Herring v. Hewitt Assocs., Inc.,*
*2007 WL 2121693 (D.N.J. July 27, 2007)* ......................................................... 11, 13

*Hoffmann v. Sbarro, Inc.,*
*982 F. Supp. 249 (S.D.N.Y. 1997)* .......................................................................... 8

*Hoffmann-La Roche Inc. v. Sperling,*
*493 U.S. 165 (1989)* ................................................................... 8, 9, 13, 23, 24, 25

*JGC v. JGC Dallas LLC,*
*2012 WL 6928101 (N.D. Tex. Nov. 29, 2012)* .......................................................... 27

*Jones v. SCO, Silver Care Operations, LLC,*
*2015 WL 5567355 (D. N. J. Sept. 22, 2015)* ............................................................ 29

*Kaynaroglu v. Avis Budget Grp., Inc.,*
*773 F. Supp. 3d 169 (D.N.J. Mar. 27, 2025)* ............................................................ 11

*King v. ITT Cont'l Baking Co.,*
*1986 WL 2628 (N.D. Ill. Feb. 18, 1986* .................................................................. 24

*Landry v. Swire Oilfield Servs., L.L.C.,*
*252 F. Supp. 3d 1079 (D.N.M. 2017)* ................................................................. 26, 27

*Leap v. Yoshida,*
*2015 WL 619908 (E.D. Pa. Feb. 12, 2015* ............................................................... 28

*Lloredo v. Radioshack Corp.,*
*2005 WL 1156030 (S.D. Fla. May 12, 2005)* ........................................................... 21

*Lynch v. United Services Auto. Ass'n,*
*491 F. Supp. 2d 357 (S.D.N.Y. 2007)* .................................................................... 23

*Maddy v. Gen. Elec. Co.,*
*59 F. Supp. 3d 675 (D.N.J. 2014)* ......................................................................... 22

*Masson v. Ecolab, Inc.,*
*2005 WL 2000133 (E.D.N.Y. Aug. 18, 2005)* .......................................................... 19

*McDonnell v. KRG Kings LLC,*
*2022 WL 3681672 (W.D. Pa. Aug. 25, 2022))* .......................................................... 22

*McLaughlin v. Richland Shoe Co.,*
*486 U.S. 128 (1988)* ......................................................................................... 28

*Monroe v. FTS USA, LLC,*
*815 F.3d 1000 (6th Cir. 2016* ............................................................................... 8

*Morisky v. Pub. Serv. Elec. & Gas Co.,*
*111 F. Supp. 2d 493 (D.N.J. 2000)* ................................................................... 8, 13

*Mueller v. CBS, Inc.,*

*201 F.R.D. 425 (W.D. Pa. 2001)* ................................................................... 10

*Ornelas v. Hooper Holmes, Inc.,*
*2014 WL 7051868 (D.N.J. Dec. 12, 2014)* ................................................. 14

*Outlaw v. Secure Health L.P.,*
*2012 WL 3150582 (M.D. Pa. Aug. 2, 2012)* ............................................. 13

*Pearsall-Dineen v. Freedom Mortg. Corp.,*
*27 F. Supp. 3d 567 (D.N.J. 2014)* .................................................. 9, 14, 24, 28

*Pontius v. Delta Fin. Corp.,*
*2005 WL 6103189 (W.D. Pa. July 22, 2005)* ........................................ 24, 25

*Porter v. Merrill Lynch Pierce Fenner & Smith, Inc.,*
*2018 WL 5874094 (D.N.J. Nov. 9, 2018)* ................................................... 29

*Regan v. City of Hanahan,*
*2017 WL 1386334 (D.S.C. Apr. 18, 2017)* ................................................. 26

*Reinig v. RBS Citizens, N.A.,*
*2017 WL 8941219 (W.D. Pa. Aug. 2, 2017)* ............................................. 18

*Reyes v. AT & T Corp.,*
*801 F. Supp. 2d 1350 (S.D. Fla. 2011)* ..................................................... 21

*Reyes v. AT & T Mobility Servs. LLC,*
*759 F. Supp. 2d 1328 (S.D. Fla. 2010))* ................................................... 20

*Rivet v. Office Depot, Inc.,*
*207 F. Supp. 3d 417 (D.N.J. 2016))* ......................................................... 22

*Robinson v. Sailormen, Inc.,*
*2016 WL 11528450 (N.D. Fla. Nov. 18, 2016)* ......................................... 28

*Rocha v. Gateway Funding Diversified Mortg. Servs., L.P.,*
*2016 WL 3077936 (E.D. Pa. June 1, 2016)* ............................................. 10

*Sanchez v. Santander Bank, N.A.,*
*2019 WL 6050738 (D.N.J. Nov. 15, 2019)* ............................................... 29

*Sec'y, U.S. Dep't of Labor v. E. Penn Mfg. Co., Inc.,*
*123 F.4th 643 (3d Cir. 2024)* ............................................................... 1, 16

*Smiley v. E.I. DuPont de Nemours & Co.,*
*839 F.3d 325 (3d Cir. 2016)* ................................................................... 17

*Solis v. A-1 Mortg. Corp.,*
*934 F. Supp. 2d 778 (W.D. Pa. 2013)* ..................................................... 17

*Sperling v. Hoffman-La Roche,*
*118 F.R.D. 392 (D.N.J. 1988), aff'd, 493 U.S. 165 (1989)* ...................... 13, 23

*Steinberg v. TD Bank, N.A.,*
*2012 WL 2500331 (D.N.J. June 27, 2012)* ...................................... 18, 19, 21, 22

*Stone v. Troy Constr., LLC,*
*2015 WL 7736827 (M.D. Pa. Dec. 1, 2015)* ............................................. 12

*Symczyk v. Genesis Healthcare Corp.,*
*656 F.3d 189 (3d Cir. 2011)* ................................................. 8, 9, 10, 11, 12, 16, 25

*Taylor v. Pittsburgh Mercy Health Sys., Inc.,*
*2009 WL 1324045 (W.D. Pa. May 11, 2009)* ........................................... 23

*Thiessen v. Gen. Elec. Capital Corp.,*
*267 F.3d 1095 (10th Cir. 2001)* ............................................................. 14

*Viscomi v. Clubhouse Diner,*

*2016 WL 1255712 (E.D. Pa. Mar. 31, 2016)* ........................................................... 28

*Waltz v. Aveda Transportation & Energy Servs. Inc.,*
*2016 WL 7440267 (M.D. Pa. Dec. 27, 2016)* ................................................... 12, 27

*Walsh v. E. Penn Mfg. Co.,*
*555 F. Supp. 3d 89 (E.D. Pa. 2021)* .............................................................. 16

*Weinmann v. Cont. Land Staff, LLC,*
*2023 WL 3881394 (W.D. Pa. June 8, 2023)* ................................................. 26, 29

*Williams v. Owens & Minor, Inc.,*
*2009 WL 5812596 (E.D. Pa. Oct. 9, 2009)* ................................................... 19

*Zanes v. Flagship Resort Dev., LLC,*
*2010 WL 4687814 (D.N.J. Nov. 9, 2010)* ..................................................... 11

*Zavala v. Wal-Mart Stores, Inc.,*
*691 F.3d 527 (3d Cir. 2012)* ........................................................ 10, 11, 14

## **STATUTES**

29 U.S.C. § 207(a) ............................................................................................... 8
29 U.S.C. § 216(b)785.19 ...................................................................................... 8
29 U.S.C. § 216(b) ................................................................................... 7, 8, 14, 25
29 U.S.C. § 255(a) ............................................................................................... 23
N.J. Stat. § 12A:1-26, § 12A:7(a) ....................................................................... 27

## **REGULATIONS**

29 C.F.R. § 516.2 ................................................................................................. 16
29 C.F.R. § 785.13 ............................................................................................... 18
29 C.F.R. § 785.19(a) ........................................................................................... 7

## <u>TABLE OF CONTENTS</u>

I. Introduction..............................................................................................................1

II. Facts Relevant to Conditional Certification.............................................................2

   A. The Parties.......................................................................................................2

      1.   Defendant.............................................................................................2
      2.   Plaintiffs and the Putative Collective.................................................3

   B. Defendant Failed to Pay for All Compensable Work Activities...................4
   C. Defendant's Shifting Sands Bonus Practice..................................................6
   D. Defendant's FLSA Violations are Widespread and Ongoing........................7

III. Argument................................................................................................................7

   A. The FLSA Authorizes Collective Actions and Notice Pursuant to 29 U.S.C. § 216(b)7
   B. FLSA "Conditional Certification" Generally................................................9
   C.The Third Circuit Endorses a Two-Step Certification Process and a Lenient Conditional Certification Standard............................................................................10
   D. Plaintiffs Exceed Their Low Burden for Certification Because They Have Made the Required Showing...............................................................................................15

      1.   Defendant Maintains a Company-Wide Unlawful Policy of Estimating Hours Worked and Not Paying for All Computer Bootup/Shutdown Time....................................................................................................16
      2.   Written Policies Prohibiting Off-the-Clock Work Do Not Insulate Employers from Liability.......................................................................18

   E. It Is Improper To Evaluate The Merits Of Plaintiffs' Case At This Stage.................19
   F. Similar Computer Bootup/Shutdown Cases and Conditional Certification……........21
   G.Plaintiffs Need Not Be Identical to the Proposed Collective.......................22
   H. Early Notice Protects Employees' Statutes of Limitations...........................23
   I.Court-Authorized Notice to Collective Members is Appropriate……............23

      1.   Plaintiffs' Proposed Form of Notice is Balanced and Contains the Disclosures Most Often Required in FLSA Cases..............................................24
      2.   Notice Should Be Sent By Mail, E-Mail, And Text….......................25
      3.   Electronic Signatures Should Be Accepted.......................................27
      4.   Notice Should be Given Within A Three-Year Statute of Limitations Period................................................................................................27
      5.   A Sixty (60) Day Opt-In Period And A Reminder Notice Are Appropriate........................................................................................28

IV. Conclusion............................................................................................................29

Certificate of Service..................................................................................................31

## I.    INTRODUCTION

Through the present motion, Named Plaintiffs Kimberly Dotson, Jennifer Conner,[1] and Amanda McConnell, as well as the Opt-In Plaintiffs (collectively the "Plaintiffs") seek conditional certification pursuant to 29 U.S.C. 216(b) of the Fair Labor Standards Act ("FLSA") of a collective of similarly situated hourly insurance sales agents ("Sales Agents") who, like Plaintiffs, were required to load and log-into essential computer systems to perform their job duties prior to clocking in, shut down those programs after clocking out, and were deprived of bonuses under Defendant's shifting-sands bonus payment policies.

First, regarding the off-the-clock computer bootup and shutdown claims, Defendant cannot legitimately oppose the present motion because, among other reasons, it uniformly paid all Sales Agents an additional 4.8 minutes of time every shift to compensate them for what it viewed was a reasonable estimation of the time needed to perform those tasks. However, as explained in both the First Amended Complaint ("FAC") and Plaintiffs' attached declarations, 4.8 minutes was woefully deficient and did not compensate the Sales Agents for the full computer bootup and shutdown activities. Moreover, as the Third Circuit has recently explained:

> If reasonable time sufficed, employers could instead estimate hours, but estimating violates the recordkeeping requirement.

*Sec'y, United States Dep't of Lab. v. E. Penn Mfg. Co., Inc.*, 123 F.4th 643, 649 (3d Cir. 2024).

In the present Motion, it would be improper for the Court to make factual findings regarding the amount of time needed to bootup the computer. Instead, the salient point is that Defendant has itself concluded that all Sales Agents engage in the same computer bootup process.

---

[1] Plaintiff Conner's name was misspelled on the caption of the First Amended Complaint. Defendant is aware of this typo, and the caption will be corrected shortly.

Next, each of the Plaintiffs in this case has asserted that Defendant engaged in a bait-and-switch policy and practice regarding the payment of non-discretionary bonuses. More specifically, Defendant promised the Sales Agents a non-discretionary bonus payment if they reached a certain number of enrollments, but then after the Sales Agents began obtaining sales under that promise, Defendant moved the goal posts and required a higher number of enrollments to obtain the bonus. As a result, Defendant regularly failed to pay Sales Agents for all bonuses earned. In overtime workweeks, this resulted in Sales Agents being paid at a deficient overtime rate because the FLSA requires that such non-discretionary bonuses earned be included in the overtime rate.

Under these facts, the Sales Agents are indisputably similarly situated in the claims asserted. Notice should be distributed to them promptly, so that they may make an informed decision about whether to participate in the case. As explained herein, early notice is critical in the context of an FLSA case because the putative collective's FLSA statute of limitations is not tolled by the filing of the complaint. Thus, for the reasons set forth herein, Plaintiffs respectfully submit that they have met their lenient burden and that their Motion is due to be granted.

## II. FACTS RELEVANT TO CONDITIONAL CERTIFICATION

### A. The Parties

#### 1. Defendant

Defendant specializes in direct-to-consumer sales for various insurance products such as Medicare Advantage, Medicare Supplement, life, and supplemental insurance products.[2] To sustain its insurance business, Defendant employs thousands of Sales Agents across the country, nearly all of whom work remotely for at least part of their employment. Defendant has represented through counsel that approximately 33% of the Sales Agents worked fully remotely and 67% of

---

[2] *See* https://www.tranzact.net/what-we-do (last accessed 2/9/26).

the Sales Agents worked a hybrid in-office and at home schedule. Defendant's counsel has also represented that, regardless of whether the Sales Agent is remote or hybrid, Defendant adds 4.8 minutes of pay to each shift to compensate them for the unpaid computer bootup/shutdown work.

### 2. Plaintiffs and the Putative Collective

Each of the Plaintiffs in this action worked for Defendant within the three years preceding the filing of this Motion. *See* **Exhibits 2-5**, Plaintiffs' Declarations. While the Sales Agents were paid a base hourly rate, Defendant provided its Sales Agents with the opportunity to earn non-discretionary, performance-based bonuses. *Id.* at ¶ 4.

Sales Agents were tasked with the common job duties of providing over-the-phone support to Defendant's customers and assisting them with finding and enrolling in Medicare health plan policies. *See, e.g., id.* at ¶ 3. Most of the Sales Agents' time was spent fielding inbound calls, but they occasionally made outbound calls as well. *Id.*

The similarity of the Sales Agents' jobs is undeniable based on Defendant's uniform job postings for the position across the country. **Exhibit 6**, Sales Agent Job Descriptions. In the uniform job postings, Defendant explains that their "focus is on leveraging [their] team of over 3,000 professionals to deliver innovative solutions for our insurance carrier partners and provide consumers with a best-in-class experience." *Id.* Defendant further claims that their Sales Agents "earn between $50,000 - $70,000 per year including uncapped monthly bonuses" with hourly rates that range from $17.00 to $19.00 per hour. *Id.*

Additionally, the uniform position descriptions for Sales Agents across the country explain their common job responsibilities as follows:

**Responsibilities:**

• Contacts and qualifies prospective customers and explains features and merits of policies offered, recommending amount and type of coverage based on analysis of

prospect's circumstances

- Communicates professionally with customers to explain policies, show value of brand(s) represented, follow-up as necessary to sell appropriate plans or policies

- Calculates and/or quotes premium rates for recommended policies

- Develops and maintains thorough product knowledge

- Demonstrates a high degree of integrity and follows compliance/quality assurance requirements

- Utilizes client and/or company-provided computer systems to perform accurate and timely data entry and submit applications

- Follows scripts and designated sales processes to complete sales in a compliant and effective manner

- Participates in training and coaching on an ongoing basis to maintain and improve performance

- Other duties may be assigned

**B. Defendant Failed to Pay for All Compensable Work Activities Which Directly Benefitted Defendant and Which Were an Essential Part of Plaintiffs' Job Responsibilities.**

As an indisputably integral and indispensable part of their job duties, Sales Agents must engage in a cumbersome computer bootup process that entails turning on their computers, logging into and connecting to computer systems and networks, and loading and logging into other essential computer programs. **Exhibits 2-5**, Plaintiffs' Declarations at ¶ 10.

To compensate Sales Agents for the time spent on the essential computer bootup and shutdown work, Defendant adds 4.8 minutes of time to each shift. However, this estimation of 4.8 minutes of additional compensation is woefully deficient to compensate the Sales Agents for their pre-, mid-, and post-shift computer bootup and shutdown time.

Defendant's policy and practice was to require all Sales Agents to be call-ready at the start of their scheduled shift. In their declarations, Plaintiffs explain that, prior to each shift, Defendant

requires them to engage in a computer bootup process that generally entails ten (10) to fifteen (15) minutes of loading, connecting, and logging into various computer programs and networks. **Exhibits 2-5,** Plaintiffs' Declarations at ¶ 11. Specifically, Plaintiffs explain that the daily computer bootup process requires the performance of nine separate steps.

   a. Turn on and wait for my computer to bootup, then access the Microsoft Windows operating system with my username and password;
   b. Load, log-in, and connect to Defendant's virtual private network (VPN) that required a dual-authentication log-in process;
   c. Log-into CUY (to obtain leads);
   d. Load and Log-into Sunfire with username and password (to document calls);
   e. Log-into Microsoft Teams (to be on camera (as Defendant required) and to otherwise communicate with team members and supervisors);
   f. Open insurance carrier websites such as Humana, BCBS, United Health Care, and Kaiser Permanente;
   g. Log-into Outlook (email) and check emails with work instructions for the day;
   h. Load and Log-into Genesys (the dialer) with a username and password; and
   i. Log-into ADP (the time keeping system) and clock-in.

**Exhibits 2-5** at ¶ 10.

In order to be fully prepared to field incoming calls at the start of their scheduled shift, Defendant required Sales Agents to complete each of the computer bootup steps. *Id*. As explained in Plaintiffs' declarations and this Motion, Defendant's policies and instruction necessarily required that these essential work activities be performed by Sales Agents off-the-clock. **Exhibits 2-5** at ¶ 11. As an on-the-job example, Defendant's management incorrectly and unlawfully trained and instructed Sales Agents that time spent booting up and shutting down essential computer programs and networks was like "drive time" or "commute time" to and from work for remote employees, and need not be compensated. **Exhibits 2-3** at ¶ 7.

Furthermore, Plaintiffs have all stated in their declarations that they could not even access the timekeeping system without first turning on their computers, loading and logging into Microsoft Windows, and loading, logging in, completing the dual authentication process, then

establishing the necessary connection to Defendant's VPN. **Exhibit 2-5** at ¶ 10. Importantly, however, Defendant evaluated Sales Agents (in part) on how closely their dialer time matched their time in the timekeeping system (ADP). *Id.* at ¶ 11. And once a Sales Agent logged into the dialer, they began receiving calls. Consequently, the Sales Agents could not log into the dialer until they had all their essential work programs loaded and could not log into ADP until they logged into the dialer. *Id.*

Similarly, Defendant required Sales Agents to be call-ready the moment their unpaid lunch period ended which, once again, required them to perform at least part of the bootup process off-the-clock. For example, Sales Agents were often automatically logged out of systems when they were idle during their lunch. Additionally, Defendant expressly instructed Sales Agents that they must log out of CUY during every lunch period. As explained in their declarations, this policy of being call-ready the moment the scheduled lunch period ended required Agents to perform *at least* another three (3) to five (5) minutes of off-the-clock work.[3] **Exhibits 2-5** at ¶ 12.

At the end of the day, "Defendant's schedule adherence policies and practices required Sales Agents to clock out immediately after, but never before, [their] scheduled shifts ended. *Id.* at ¶ 13. This resulted in an additional three (3) to five (5) minutes of off-the-clock work every shift, as is explained in Plaintiffs' declarations. *Id.* at ¶ 14.

In summary, Defendant's policies and practices generally failed to pay Sales Agents for no less than seventeen (17) minutes per day of work performed in connection with the above off-the-clock work activities. In most cases, this additional off-the-clock work was overtime. *Id.* at ¶ 14.

## C. Defendant's Shifting Sands Bonus Practices

As stated above, in the Plaintiffs' declarations, and in the attached job descriptions,

---

[3] *See*, 29 C.F.R. § 785.19(a) (explaining employees "must be completely relieved from duty" during bona fide meal periods).

Defendant offered all Sales Agents the opportunity to earn performance-based bonuses. However, in addition to the off-the-clock work discussed above, Defendant regularly moved the goal posts on Sales Agents' bonus incentives *after* they had already made sales based on the promise of the previously stated goals and incentives. **Exhibits 2-5** at ¶ 22.

For example, Defendant would promise to pay a bonus tied to a specified number of enrollments. However, if Defendant felt too many Sales Agents were achieving or close to reaching the bonus, it unilaterally increased the target number of enrollments needed to achieve the bonus *after* Sales Agents had already achieved the bonus or were about to achieve the bonus. *Id*. As a result of this shifting-sands bonus policy, Defendant failed to pay Sales Agents all their earned bonuses, which in overtime weeks also resulted in Sales Agents being paid at a deficient overtime rate, in violation of the FLSA. *Id*. at ¶ 23

### D. Defendant's FLSA Violations are Widespread and Ongoing.

Plaintiffs and the other Sales Agents all worked for Defendant and were subject to the same unlawful pay practices, as outlined herein. While the Parties may disagree on the duration of the off-the-clock work activities alleged, Defendant cannot credibly argue that the Sales Agents are not similarly situated in their claims because it estimated that 4.8 minutes across the board was sufficient compensation for all Sales Agents to complete the bootup/shutdown activities. This admission, along with Plaintiffs' allegations in the FAC and their declarations, provide *prima facie* evidence that Court-authorized notice is warranted.

### III.    ARGUMENT

### A.    The FLSA Authorizes Collective Actions and Notice For "Similarly Situated" Employees, Pursuant To 29 U.S.C. §216(b).

The FLSA is a remedial act[4] specifying that "no employer shall employ any of his

---

[4] "Congress passed the FLSA with broad remedial intent, to address unfair method[s] of

employees … for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." *See* 29 U.S.C. § 207(a). Compliance with this provision is obtained through the maintenance of *accurate* records of all hours worked by employees. *See* 29 U.S.C. § 211(c). An employer who violates the overtime pay requirements can be sued by the affected employees collectively. *See* 29 U.S.C. § 216(b). Moreover, where the employer's violations are alleged to be widespread, the FLSA affirmatively grants an aggrieved employee the right to bring an action "for and on behalf of himself … and other employees similarly situated." *Id.*; *see also Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011) (quoting 29 U.S.C. § 216(b)). *See also*, *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 496 (D.N.J. 2000).

In *Hoffmann-La Roche*,[5] the Supreme Court held that lower courts have authority to facilitate collective actions by approving the issuance of notice and overseeing the notice process. 493 U.S. 165, 173 (1989). Commenting favorably on the important role of collective actions, the Supreme Court stated that:

> A collective action allows … plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged … activity. ***These benefits, however, depend on employees receiving***

---

competition in commerce that cause conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Monroe v. FTS USA, LLC*, 815 F.3d 1000, 1008 (6th Cir. 2016). "The provisions of the statute are remedial and humanitarian in purpose, and must not be interpreted or applied in a narrow, grudging manner." *Id.* (internal quotations omitted).

[5] Although *Hoffmann-La Roche* is an Age Discrimination in Employment Act (ADEA) case, its analysis is applicable to FLSA cases because the ADEA explicitly incorporates the FLSA collective action provisions. *Mooney v. Aramco Servs. Co*, 54 F.3d 1207, 1212 (5th Cir. 1995); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 n.15 (S.D.N.Y. 1997) ("[I]n Hoffmann-La Roche, the Supreme Court construed § 216(b) on its own terms, and its analysis applies with equal force to FLSA cases.").

> *accurate and timely notice concerning the pendency of the*
> *collective action, so that they can make informed decisions about*
> *whether to participate.*

*Id.* at 170 (emphasis added). "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Genesis HealthCare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (emphasis added, internal quotations omitted); *see also Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 573 (D.N.J. 2014).

To that end, the Third Circuit has explained the importance of Courts issuing notice to members of the putative collective ***early*** because:

> A district court's early intervention in the preparation and distribution of notice to
> potential participants serves legitimate purposes, including avoidance of a
> multiplicity of duplicative suits and establishing cut-off dates to expedite
> disposition of the action.

*Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016). *See also Pearsall-Dineen*, 27 F. Supp. 3d at 573 (same). Indeed, such notice ensures the workers receive accurate and timely information concerning the pendency of the collective action, which enables them to make informed decision about whether to participate, and it protects valid unpaid wage claims from eroding due to the FLSA statute of limitations. It is against this well-developed backdrop that courts should decide conditional certification.

**B.    FLSA "Conditional Certification" Generally**

Conditional certification merely facilitates the notice process and protects the statute of limitations for employees who may be unaware that they have claims. As the Third Circuit has explained, conditional certification has nothing to do with "class certification" in the traditional sense: "the certification we refer to here is only the district court's exercise of [its] discretionary power, upheld in *Hoffman-LaRoche*, to facilitate notice to potential class members, and is neither

necessary nor sufficient for the existence of a representative action under FLSA." *Symczyk*, 656 F.3d at 194 (internal quotations omitted); *accord Halle*, 842 F.3d at 224. Put differently, "'conditional certification' is not really a certification." *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 536 (3d Cir. 2012)

Whether the lawsuit *ultimately* will proceed as a collective action is determined later in the litigation, "[a]fter discovery, and with the benefit of a much thicker record than it had at the notice stage." *Symczyk*, 656 F.3d at 193 (internal quotation omitted); *see also Mueller v. CBS, Inc.*, 201 F.R.D. 425, 429 (W.D. Pa. 2001) ("to require conclusive findings of 'similar situations' before providing notice . . . to absent class members 'would condemn any large class claim . . . to a chicken and egg limbo in which the class could only notify all its members to gather after it had gathered together all its members'").

Consistent with the above principles, courts have observed that, in deciding conditional certification, courts "should err in favor or providing notice to employees." *Garcia v. Nunn*, 2016 WL 1169560, at *3 (E.D. Pa. Mar. 25, 2016). Moreover, courts "may not evaluate the merits of Plaintiff's claims at this stage of the litigation." *Rocha v. Gateway Funding Diversified Mortg. Servs., L.P.*, 2016 WL 3077936, *1 (E.D. Pa. June 1, 2016). This includes merits-based challenges made in the form of "happy camper" declarations submitted by a defendant on behalf of cherry-picked current employees. *Goodman v. Burlington Coat Factory*, 2012 WL 5944000, at *6 (D.N.J. Nov. 20, 2012); *Depalma v. Scotts Co. LLC*, 2016 WL 7206151, at *3 (D.N.J. Mar. 31, 2016).

**C.    The Third Circuit Endorses a Two-Step Certification Process and a Lenient Conditional Certification Standard.**

Like district and circuit courts around the country, including this Court, the Third Circuit has long-recognized that a collective action has two stages, namely the conditional certification and notice stage and the final certification stage. *Halle*, 842 F.3d at 224 ("…courts have developed

a practical approach to managing FLSA collective actions. This approach, which has been recognized by the Supreme Court and is widely accepted in most jurisdictions, is a two-step certification process"); *Zavala*, 691 F.3d at 536 (noting that "this two-tier approach, while 'nowhere mandated, ... appears to have garnered wide acceptance.'… We implicitly embraced this two-step approach, and we affirm its use here.") (citing *Symczyk,* 656 F.3d at 192 fn 5); *Kaynaroglu v. Avis Budget Grp., Inc.*, 773 F.Supp.3d 169, 187 (D.N.J. Mar. 27, 2025) (using two-step certification process, noting that "[n]umerous Third Circuit decisions following *Symczyck* plainly endorse the two-step certification approach" and rejecting invitation to abandon two-step process, agreeing that "every district court in the Third Circuit to consider [a one-step approach] has soundly rejected it."); *Hagans v. Nat'l Mentor Healthcare, Inc.*, 2023 WL 2554159, at *2 (D.N.J. Mar. 17, 2023) ("The Third Circuit follows a two-step process for deciding whether an action may proceed as a collective action under the FLSA.").

Pursuant to this two-step approach, the first stage is the notice stage (also referred to as Stage 1). At this stage, the court uses a modest or lenient standard to determine whether notice should be given to potential collective members, and the court's determination typically results in conditional certification of a representative collective.[6] *Asirifi v. W. Hudson Sub-Acute Care Ctr., LLC*, 2014 WL 294886, at *2 (D.N.J. Jan. 24, 2014) ("At this stage, the court usually only has evidence before it in the form of pleadings and affidavits, so it uses a fairly lenient standard to determine whether potential collective action members are similarly situated and the court's determination 'typically results in conditional certification of a representative class.'")*,* citing *Herring v. Hewitt Assocs., Inc.,* 2007 WL 2121693 at *5 (D.N.J. July 27, 2007); *Halle*, 842

---

[6] This case is at Stage One, because no discovery has been completed and the case has not yet been certified ready for trial. *Zanes v. Flagship Resort Development, LLC*, 2010 WL 4687814, at *3 (D.N.J. Nov. 9, 2010)("because the case is not yet ready for trial and discovery has just begun, the Court will consider [the conditional certification] Motion under the stage one burden of proof.").

F.3d at 224 ("The first step, so-called conditional certification, requires a named plaintiff to make a "modest factual showing"—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members."). Indeed, in *Symczyk*, the Third Circuit clarified that conditional certification motions are subject to a "modest factual showing" standard:

> Under the "modest factual showing" standard, a plaintiff must produce some evidence, "***beyond pure speculation***," of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees. We believe the "modest factual showing" standard – which works in harmony with the opt-in requirement to cabin the potentially massive size of collective actions – best comports with congressional intent and with the Supreme Court's directive that a court "ascertain[] the contours of [a collective] action at the outset."

*Symczyk*, 656 F.3d at 192-93 (emphasis supplied; internal citations omitted). Because of the two-step nature of the analysis, conditional certification is normally decided "early in the litigation when the court has minimal evidence." *Stone v. Troy Constr., LLC*, 2015 WL 7736827, at *2 (M.D. Pa. Dec. 1, 2015). *See also Aquilino v. Home Depot, U.S.A., Inc.*, 2011 WL 564039, at *6 (D.N.J. Feb. 15, 2011) ("This analysis occurs early in the litigation when the court only has minimal evidence; thus, the analysis uses a fairly lenient standard and usually results in the grant of conditional certification.") S*ee Waltz v. Aveda Transportation & Energy Servs. Inc.*, 2016 WL 7440267, at *2 (M.D. Pa. Dec. 27, 2016) (describing the burden as "extremely lenient.")

If a plaintiff satisfies the lenient "similarly situated" standard at this stage, then the Court grants conditional certification of the collective action for the purpose of sending notice to the potentially affected employees and conducting discovery concerning the opt-in plaintiffs. *Genesis Healthcare v. Symczyk*, 133 S. Ct. at 1530. ("The sole consequence of conditional certification is the sending of court-approved written notice"). Only at the second stage does the Court make a

decision on final certification based upon a "specific factual analysis of each employee's claim to ensure that each claimant is an appropriate party." *Herring*, 2007 WL 2121693, at *3.

To meet their lenient Stage 1 burden, and demonstrate that Plaintiffs and the other Sales Agents are similarly situated, Plaintiffs need not show that their positions are identical to the positions of other putative collective members. *Sperling v. Hoffman-La Roche,* 118 F.R.D. 392, 405 (D.N.J. 1988), *affd., Hoffman La-Roche v. Sperling,* 493 U.S. 165 (1989); *Outlaw v. Secure Health L.P*., 2012 WL 3150582, at *6 (M.D. Pa. Aug. 2, 2012) ("[P]recedent shows that a plaintiff need not prove an absolute uniformity of facts with every putative class member to satisfy the lenient standard for conditional certification.") (citing cases). Rather, Plaintiffs need only show "a factual nexus between [their] situation and the situation of other current and former [employees] sufficient to show that they are similarly situated." *Aquillino v. The Home Depot,* 2006 WL 2583563, at *2 (D.N.J. Sept. 7, 2006). As this Court has noted, "Plaintiffs must show three things: (1) an employer policy, (2) that affected the Plaintiffs in a particular way, and (3) that also affected other employees in a similar way." *Hagans*, 2023 WL 2554159, at *3 (quoting *Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 200 (W.D. Pa. 2014)).

The requirement to establish a factual nexus supporting a finding that the collective members are similarly situated is not meant to impose a heavy burden on the plaintiff moving for conditional certification at Stage 1. As the determination at this stage is based solely on the minimal evidence before the Court, such as pleadings and declarations/affidavits, the lenient standard typically results in conditional certification of a representative collective to whom notice is sent and who receive an opportunity to "opt in." *Morisky,* 111 F.Supp.2d at 497; *see also Aquillino,* 2006 WL 2583563, at *1-2. To meet this "extremely lenient" burden, Plaintiffs need only put forth the pleadings and one or more declarations to substantiate the allegations showing

they and the proposed collective members are similarly situated. *Zavala*, 691 F.3d at 538 (defining "similarly situated" as meaning "that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA"); *Ornelas v. Hooper Holmes, Inc.*, 2014 WL 7051868, at *7 (D.N.J. Dec. 12, 2014) ("[T]he Court will look to the pleadings and declarations on record to determine whether there are substantial allegations showing that the named Plaintiffs are similarly situated to the putative [collective] members."); *see also Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (noting that courts require "nothing more than substantial allegations that the putative [collective] members were together the victims of a single decision, policy, or plan." (cleaned up)). To show that Plaintiffs and other workers are similarly situated, Plaintiffs need not show that their positions are identical to the position of the other putative collective members, only similar. *Pearsall-Dineen*, 27 F. Supp. 3d at 570. Moreover, even under the plain language of the FLSA itself, Plaintiffs need only demonstrate that the collective consists of Sales Agents similarly situated to Plaintiffs with regard to Defendant's payroll practices and record keeping requirements. *See* 29 U.S.C. § 216(b).

In the instant case, based on the evidence submitted in support of this Motion, there is an obvious factual nexus between Plaintiffs and the other Sales Agents sufficient to show that they were the victims of a common policy or plan, leading to a common harm. Indeed, Plaintiffs' claims are typical of the claims of the other individuals who are/were Sales Agents. *See* Sec. II (A) (2).

Based upon the Consents previously filed and the Declarations filed in support of the instant Motion, Plaintiffs easily exceed their burden to facilitate notice. Here, all of Defendant's hourly-paid Sales Agents performed the same job duties, and worked overtime hours for which they were not paid, due to the policies and practices pursuant to which they were not paid for bootup time in the morning and after lunch, and time spent logging out at the end of the day, as

well as policies and practices which deprived them of all owed bonuses, necessarily resulting in paid overtime being paid at the incorrect rate. *See id.* Notwithstanding the regular and overtime hours worked by Plaintiffs and other similarly situated Sales Agents, Defendant failed to pay them overtime compensation for their hours worked over forty in one or more workweeks. *See id.* As a result of these practices, Defendant regularly failed to pay all of its Sales Agents proper overtime compensation owed, and Plaintiffs' motion should be granted.

**D.      Plaintiffs Exceed Their Low Burden for Certification Because They Have Made the Required Showing That They and Other Workers are Similarly Situated and are Subject to a Common Unlawful Policy.**

Applying the "modest factual showing" standard, the Court should conditionally certify an FLSA "Collective" consisting of:

> *All current and former hourly-paid Technical Support Specialists – Sales Agents ("Sales Agents") who worked for Defendant at any time during the three years prior to the order granting conditional certification.*

As summarized herein, the record sufficiently demonstrates that individuals in the proposed Collective are bound together by an unlawful common policy wherein they and other non-exempt Sales Agents are generally paid through an estimation of their hours worked rather than actual hours worked. In fact, across the board, Defendant paid all Sales Agents an additional 4.5 minutes based on its own estimation of how long it took them to perform the computer bootup process. This is an inescapable admission that all Sales Agents are similarly situated in the off-the-clock work claims asserted herein.

Additionally, Sales Agents from multiple states have submitted declarations that Defendant routinely moved the goal posts on bonus plans to avoid paying them for all bonuses earned. If true, and the merits of their claims are not presently before the Court, then Defendant paid all Sales Agents at a deficient overtime rate because it did not incorporate bonuses earned (but not paid)

into the calculation of their overtime rate, as required by the FLSA.

As such, conditional certification is warranted because Plaintiffs have "produc[ed] some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees." *Symczyk*, 656 F.3d at 192.

### 1. Defendant Maintains a Company-Wide Unlawful Policy of Estimating Hours Worked and Not Paying for All Computer Bootup/Shutdown Time.

Under the FLSA, an employer has a non-delegable duty to maintain and preserve accurate records of the hours worked each workday and the total hours worked each work week. 29 C.F.R. § 516.2. Critically, the FLSA does not permit an employer to **estimate** the number of hours worked by employees. "[R]ecording only shift times is a recordkeeping violation when it is not reflective of actual hours worked." *Walsh v. E. Penn Mfg. Co.*, 555 F. Supp. 3d 89, 112 (E.D. Pa. 2021), *adhered to on denial of reconsideration*, 2021 WL 4215503 (E.D. Pa. Sept. 16, 2021). Recently, the Third Circuit left no doubt explaining that "under the Act, the correct measure is actual time." *Sec'y, United States Dep't of Lab. v. E. Penn Mfg. Co., Inc.*, 123 F.4th 643, 649 (3d Cir. 2024).

In *East Penn*, the employer argued that its additional payments to employees were a "reasonable" estimation of the time needed to account for the alleged unpaid time spent changing and showering – tasks that were (like in this case) undeniably compensable activities. *Id*. However, the employer failed to track or pay for the actual time spent by the employees changing and showering. Just like in this case, the employees argued the payments made for the estimation of time spent showering was insufficient compensation for the *actual* time it took to shower and change. In determining that the employer had violated the FLSA, the Third Circuit explained that "**[i]f reasonable time sufficed, employers could instead estimate hours, but estimating violates the recordkeeping requirement.**" *Id*. Noting "[a]mong the bedrock principles of the Act

is the requirement that employers pay employees for all hours worked," the Court held "basing liability on the actual time that workers spend" was required. *Id*., *quoting Smiley v. E.I. Dupont De Nemours & Co.*, 839 F.3d 325, 330 (3d Cir. 2016).

Much like *East Penn*, the alleged off-the-clock work in this case is likewise an undeniably compensable activity under the FLSA. *See*, *Garcia v. Vertical Screen, Inc.*, 580 F. Supp. 3d 79, 87 (E.D. Pa. 2022) (holding "the time Plaintiffs spent booting up their computers and necessary software is compensable under the FLSA."). Thus, whether it is showering and changing in the donning and doffing context or booting up and shutting down computers in the remote worker context, an employer is *not* permitted to estimate hours worked by employees. *See also Solis v. A-1 Mortg. Corp.*, 934 F. Supp. 2d 778, 806 (W.D. Pa. 2013) ("Employers may not estimate employees' hours worked").

In 2008, the United States Department of Labor issued a "Fact Sheet" alerting the public to the wage abuses prevalent with hourly employees that rely on computers to perform their job stating the "hours worked includes … the first principal activity of the workday to the end of the last principal activity of the workday. Also included is any additional time the employee is allowed (i.e. suffered or permitted) to work. An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." Exh. 6, DOL Fact Sheet. Furthermore, the Fact sheet provides that the employer is required to maintain "[a] daily and weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities." *Id*. Finally, overtime wages must be paid based on the "total number of hours actually worked." *Id*. In other words, it is unlawful for Defendant to simply pay employees based on its own estimation that 4.8 minutes of added time per day is sufficient to complete all the off-the-

clock work alleged in the FAC.

Here, the FAC alleges that the computer bootup and shutdown work took Sales Agents *no less* than seventeen (17) minutes per day. Doc. 26, FAC at ¶ 69. Plaintiffs have also submitted declarations to that fact in support of the present Motion. Ex. 2-5 at ¶ 16. Nonetheless, Defendant only paid Sales Agents 4.8 minutes for these activities – not even half the time asserted by Plaintiffs. Under these facts, there is no question Sales Agents are similarly situated.

### 2. Written Policies Prohibiting Off-the-Clock Work Do *Not* Insulated Employers from Liability.

"[E]mployers have an independent duty to ensure that employees are paid for all overtime work that they know or have reason to know about." *Steinberg v. TD Bank, N.A.,* 2012 WL 2500331, at *9 (D.N.J. June 27, 2012). "This duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours." *Id*., quoting *Chao v. Gotham Registry, Inc.,* 514 F.3d 280, 287–88 (2d Cir. 2008).

Furthermore, the "existence of a culture that discourages reporting overtime may support an inference that an employer knew of its employees' failure to report overtime." *Reinig v. RBS Citizens, N.A.*, 2017 WL 8941219, at *5 (W.D. Pa. Aug. 2, 2017). Importantly, the applicable federal regulations provide that:

> it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. [Management] cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13.

In *Steinberg*, the court granted conditional certification to employees that claimed they were not paid for the time spent loading and logging into their computers due to "unwritten

company-wide policies" that deterred them from reporting the time. *Steinberg* at *7. In opposition

of conditional certification, the employer offered its "written policy requiring that all time worked

be paid." *Id*. at *8. The court properly rejected this argument, and in granting conditional

certification noted that "**a written policy is not required, and an unwritten but companywide**

**policy, as Plaintiffs offer evidence of here, is sufficient even where the unofficial policy is**

**contrary to the official written policy.**" *Id*. Likewise, the court rejected the defendants

individualized, merit-based arguments holding that "to the extent that certain [collective members]

recorded and were paid for their [off-the-clock] time, these [collective members] will simply not

be class members or will not be eligible for damages." *Id*., at 9.

**E.    It Is Improper To Evaluate The Merits Of Plaintiffs' Case At This Stage.**

Defendant will inevitably deny Plaintiffs' allegations and may even ask the Court to

consider the merits in deciding this motion. For example, Defendant will argue that its estimated

payments of 4.5 minutes per shift cover all of the off-the-clock work alleged herein. Such

consideration, at this stage, would be inappropriate. *See Bamgbose v. Delta-T Grp., Inc.*, 684 F.

Supp. 2d 660, 664 (E.D. Pa. 2010) ("The court does not make any credibility determinations or

findings of fact when presented with contrary evidence."); *Williams v. Owens & Minor, Inc.*, 2009

WL 5812596, at *3 (E.D. Pa. Oct. 9, 2009) ("precedent makes clear that, in ruling on the motion

for conditional certification, it is not appropriate to adjudicate plaintiffs' claims on the merits.");

*Bowser v. Empyrean Servs., LLC*, 324 F.R.D. 346, 353 (W.D. Pa. 2018) ("The question of whether

or not plaintiff has stated a cause of action, or will prevail, is a merits-based argument that the

Court will not entertain at the conditional certification stage."). Indeed, the merits of the claims

"need not be evaluated nor discovery be completed in order for such a notice to be approved and

disseminated." *Aquillino*, 2006 WL 2583563, at *2 (quoting *Masson v. Ecolab, Inc.*, 2005 WL

2000133, at *12-14 (E.D.N.Y. Aug. 18, 2005)); *see also Bishop v. AT & T Corp.,* 256 F.R.D. 503, 507 (W.D. Pa. 2009) (in determining whether the plaintiffs have made a "modest factual showing," "the merits of the plaintiffs' claims are not addressed.")Thus, the ultimate question of whether off-the-clock work was in fact performed is not presently before the Court. Likewise, any arguments related to the credibility of Plaintiffs are no appropriate for this motion. *See*, *Friscia v. Panera Bread Co.*, 2018 WL 3122330, at *8 (D.N.J. June 26, 2018) (refusing to consider the defendant's declarations and holding "[t]hat evidence speaks to the credibility of Plaintiffs' evidence, which is not relevant at the conditional certification stage.") (*quoting Kis v. Covelli Enterprises, Inc.*, 2018 WL 2227782, at *2 (N.D. Ohio May 16, 2018).

While no formal discovery has taken place to date, it would be similarly improper for the Court to consider discovery at this stage, given that no factual determinations are made at conditional certification, and courts routinely and consistently reject calls to consider or conduct discovery at Stage I. *See, e.g., Goldman v. Radioshack Corp.*, 2003 WL 21250571, at *8 (E.D. Pa. 2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant."); *Reyes v. AT & T Mobility Servs. LLC*, 759 F. Supp. 2d 1328, 1332 (S.D. Fla. 2010) ("[M]otions for conditional certification are made at a much-earlier stage in the litigation than motions for summary judgment. Summary judgment motions are made at the completion of discovery but motions for conditional certification are made, as here, when little or no discovery has occurred.") (citing*White v. MPW Industrial Services, Inc.,* 236 F.R.D. 363, 368 (E.D. Tenn. 2006)); *Brown v. Money Tree Mortgage, Inc.,* 222 F.R.D. 676, 682 (D. Kan. 2004) ("[T]he court will examine the individual plaintiffs' disparate factual and employment setting, as well as various defenses available to the defendant which appear to be individual to each plaintiff, during the 'second stage' analysis after the close of discovery."); *Camper v. Home*

*Quality Mgmt., Inc.,* 200 F.R.D. 516, 520 (D. Md. 2000) ("Factual disputes do not negate the appropriateness of court facilitated notice."); *Lytle v. Lowe's Home Centers, Inc*., 2014 WL 103463, at *2 (M.D. Fla. Jan. 10, 2014) ("Notably, the Court does not make credibility determinations or resolve contradictory evidence presented by the parties during the notice stage."); *Lloredo v. Radioshack Corp.*, 2005 WL 1156030, at *1 (S.D. Fla. May 12, 2005) (refusing to examine discovery in making its first stage similarly situated determination); *Harrison v. Enterprise Rent-A-Car Co*., 1998 WL 422169, at *13 (M.D. Fla. July 1, 1998) (holding that the fact that subsequent discovery may prove the original plaintiffs and the opt-in plaintiffs are not after all "similarly situated" does not defeat conditional class certification). Thus, any attempt to defeat conditional certification through presentation of purportedly contradictory evidence is improper and should be rejected out of hand. *See Reyes v. AT & T Corp.*, 801 F. Supp. 2d 1350, 1358 (S.D. Fla. 2011) ("Defendant's attempt . . . to seek a factual determination on the similarly situated question by presenting a vast amount of affidavit evidence 'demonstrate[s] a fundamental misunderstanding of the nature of the proceedings at this stage of the litigation.'").

F.    **Similar Computer Bootup/Shutdown Cases and Conditional Certification**

District Courts in this Circuit routinely grant conditional certification to hourly employees on claims of unpaid computer bootup time. *Bishop v. AT & T Corp.*, 256 F.R.D. 503, 509 (W.D. Pa. 2009) (granting conditional certification where "call center employees believed it necessary to be logged into their computers at the beginning of their scheduled [h]ours"); *Steinberg* at *9 (granting conditional certification for unpaid computer bootup activities based on an unwritten policy); *Fulton v. Cap. Mgmt. Servs., L.P.*, 2025 WL 353904, at *3-4 (W.D. Pa. Jan. 31, 2025) (granting conditional certification where employer allowed employees to clock in five minutes before their shifts but "[i]t took longer than five minutes—sometimes much longer—to get ready

to take calls because of assorted technical issues."); *Clark v. Intelenet Am., LLC*, 2020 WL 831127, at *4 (D.N.J. Feb. 19, 2020) (granting conditional certification for unpaid bootup time and refusing to limit the collective to certain projects); *Adams v. QVC, Inc.*, 2021 WL 5906242, at *4 (E.D. Pa. Dec. 14, 2021) (granting conditional certification of collective of employees who were allegedly not paid for computer boot up and that performed similar job duties to customer service representatives).

Similarly, *Maddy v. Gen. Elec. Co.*, 59 F. Supp. 3d 675, 678 (D.N.J. 2014), the Court granted conditional certification to "service technicians [who were] instructed to begin each day by putting their computers in their vans, and logging in to get their list of calls for the day."

**G.    Plaintiffs Need Not Be Identical to the Proposed Collective.**

Plaintiffs are not required to show they are identical to the putative collective, but instead, must only make a modest factual showing that they are similar. *See Carr v. Flowers Foods, Inc.*, 2019 WL 2027299, at *4 (E.D. Pa. May 7, 2019) (holding that "[t]o be found similarly situated, members of the collective need not have an identical experience; "complete symmetry of job functions is not required for final certification under the FLSA.") (*quoting Rivet v. Office Depot, Inc.*, 207 F. Supp.3d 417, 426 (D.N.J. 2016)); *McDonnell v. KRG Kings LLC*, 2022 WL 3681672, at *4 (W.D. Pa. Aug. 25, 2022) ("Plaintiffs' work circumstances need not be identical for final certification to be appropriate.").

To that end, different job titles, locations, or supervisors do not warrant denial of conditional certification where there has been a modest factual showing of a common policy to violate the FLSA. Indeed, "the fact that different Plaintiffs worked at different call centers and with different supervisors, but nonetheless reported the same treatment, supports the notion that there was a company-wide policy." *Steinberg* at *9.

## H.    Early Notice Protects Employees' Statutes of Limitations.

The statute of limitations for FLSA violations is two years, extended to three years for willful violations. *See* 29 U.S.C. § 255(a). Accordingly, if notice is delayed, a great number of employees may lose their claims due to nothing more than the passage of time. *See*, *e.g.*, *Taylor v. Pittsburgh Mercy Health Sys., Inc.*, 2009 WL 1324045, at *2 (W.D. Pa. May 11, 2009) ("time is of the essence for purposes of FLSA notice because the statute of limitations is not tolled until a potential plaintiff opts into the proposed collective action"); *LaFleur v. Dollar Tree Stores, Inc.*, 2012 WL 4739534, at *3 (E.D. Va. Oct. 2, 2012) ("[b]ecause the statute of limitations continues to run on unnamed class members' claims until they opt into the collective action . . . courts have concluded that the objectives to be served through a collective action justify the conditional certification of a class of putative plaintiffs early in a proceeding"); *see also Lynch v. United Services Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007); *Smith v. Lowe's Cos., Inc.*, 2005 WL 6742234, at *4 (S.D. Ohio May 11, 2005).

As the lower court stated in *Sperling*, 118 F.R.D. at 406 :

> [N]otice to absent class members need not await a conclusive finding of similar situations. To impose such a requirement would condemn any large class claim . . . to a chicken-and-egg limbo in which the class could only notify all its members to gather together after it had gathered together all its members, and from which the class could escape only by refusing entry after some unpublicized cutoff date to additional class members who thereafter stumble upon the case by themselves.

In contrast, allowing notice early in the case ensures that later decisions are 'informed, efficiently reached, and conclusive.'" *Id*. *See also Hoffman-La Roche* at 170 (explaining that the benefits of the FLSA "depend on employees receiving accurate and timely notice").

## I.    Court-Authorized Notice to Collective Members is Appropriate.

To facilitate timely and orderly notice to all potential collective members, Plaintiffs request

that this Court order Defendant to identify all potential opt-in plaintiffs. Specifically, Plaintiffs request a list in electronic and importable format (including their: names, employee ID numbers, last known addresses, dates and locations of employment, telephone numbers, and personal e-mail address), within 10 days of the Court's ruling on this Motion, of

> All current and former hourly-paid Technical Support Specialists – Sales Agents ("Sales Agents") who worked for Defendant at any time during the three years prior to the order granting conditional certification.

Discovery of this information facilitates effective notice to potential collective members so they may exercise their right to opt in, or not. *See Hoffmann-La Roche*, 493 U.S. at 170; *Pearsall-Dineen*, 27 F. Supp. 3d at 573 ("even if [defendant] had objected to producing the relevant names, addresses, and email addresses of potential class members, such material may properly be discovered to facilitate notice of a FLSA collective action."); *Robles v. Vornado Realty Tr.*, 2015 WL 5012597, at *5 (D.N.J. Aug. 21, 2015) ("Defendant shall produce the relevant names, addresses, phone numbers and email addresses of potential class members, as such material may properly be discovered to facilitate notice of a FLSA collective action."); *Pontius v. Delta Fin. Corp.*, 2005 WL 6103189, at *4 (W.D. Pa. July 22, 2005) ("notice and an opt-in opportunity should be broadly given").

### 1. Plaintiffs' Proposed Form of Notice is Balanced and Contains the Disclosures Most Often Required in FLSA Cases.

Plaintiffs' proposed Notice is attached as **Exhibit 1**. The notice is a FLSA plaintiff's communication with her co-workers and, thus, absent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use their chosen language. *See King v. ITT Cont'l Baking Co.*, 1986 WL 2628, at *3 (N.D. Ill. Feb. 18, 1986) ("[A]lthough the Court has both the power and duty to ensure that the notice is fair and accurate, that power should not be used to

24

alter plaintiffs' proposed notice unless such alteration is necessary.").[7]

That being said, Plaintiffs' proposed Notice was fashioned after notices which have been approved by other courts in other FLSA collective actions. *See e.g.*, *Cruz v. Connexion Point, LLC*, 2025 WL 3063380 (D. Utah Nov. 3, 2025); *Kenan v. Glob. Payments, Inc.*, 2023 WL 4033149 (M.D. Ga. June 15, 2023); *Oliver v. Centene Corp.*, 2022 WL 683123 (E.D. Mo. Mar. 8, 2022); *Davis v. Dynata, LLC*, 2023 WL 6216809 (D. Conn. Sept. 25, 2023).

The proposed Notice also fully addresses concerns other courts in this Circuit have raised, including: (1) acknowledgement to be bound by any favorable or unfavorable rulings or settlements; (2) acknowledgement that the potential plaintiff may be asked to sit for deposition, respond to written discovery, and/or appear at trial; (3) a non-argumentative summary of the claims with an equally prominent statement that the defendant denies same; (4) the exclusion of references to the nature of Plaintiffs' state law claims; (5) use of the terms "collective action" and "opt-in plaintiff" as instead of "Class Action" and "members of a class"; (6) inclusion of a website address and/or an email address for potential opt-in plaintiffs to use to opt into this action; (7) the absence of language or characterization giving an appearance of judicial endorsement of the merits of the action; and (8) explicit statement regarding the deadline for putative class members to opt-in. *See generally Pontius*, 2005 WL 6103189, at *4; *Hoffman*, 2004 WL 5642136, at *6.

### 2. Notice Should Be Sent By Mail, E-Mail, And Text.

In another recent FLSA opinion stated "'it is appropriate in the modern digital age to

---

[7] Again, conditional certification and § 216(b)'s *opt-in requirements* are very different than the due process protections required for class actions. *Accord Genesis Healthcare v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) ("The sole consequence of conditional certification is the sending of court-approved written notice") (citing *Hoffman-LaRoche*, 493 U.S. at 171-72); *see also Church v. Consol. Freightways, Inc.*, 137 F.R.D. 294, 299 (N.D. Cal. 1991) (noting that neither the Third Circuit nor the Supreme Court even reviewed the notice in *Hoffman-LaRoche* when affirming the district court's approval of it).

distribute notice by mail, email, and text, because although people frequently move and change addresses, they typically retain the same email addresses and phone numbers.'" *Weinmann v. Cont. Land Staff, LLC,* 2023 WL 3881394, at *7 (W.D. Pa. June 8, 2023) (citation omitted). *See also, Belt v. P.F. Chang's China Bistro, Inc.*, 2020 WL 3829026, at *9 (E.D. Pa. July 8, 2020), *petition denied*, 2022 WL 1746841 (3d Cir. Jan. 12, 2022) (same).[8]

Text and email notices, in particular, are widely accepted as the best forms of notice in the digital age. *See Landry v. Swire Oilfield Servs., L.L.C.,* 252 F. Supp. 3d 1079, 1129 (D.N.M. 2017) ("The Court finds persuasive the [p]laintiffs' argument that communication via email and text message will 'increase the chance of the class members receiving and reading the notice. . .'"). In addition, "given the amount of junk mail that people receive, email and text message likely are more effective methods for communicating with potential class members than traditional first-class mail." *Id.* at 1130; *see also Irine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("[T]ext messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone serving as the most consistent and reliable method of communication"); *Regan v. City of Hanahan*, 2017 WL 1386334, at *3 (D.S.C. Apr. 18, 2017) ("text messaging is reasonable because, in today's mobile society, individuals are likely to retain their mobile numbers and email addresses even when they move"); *Vega v. Point Security, LLC*, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017) (finding email and text notice proper because "in the world of 2017, email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population").

---

[8] *See also*, *Mott v. Driveline Retail Merch., Inc.*, 23 F. Supp. 3d 483, 491 (E.D. Pa. 2014) ("Plaintiffs must send to each member of the conditional class by regular mail and email the Notice and Consent to Join forms attached to this Order."); *Talarico v. Pub. Partnerships, LLC*, 2018 WL 3972332, at *4 (E.D. Pa. Aug. 20, 2018) (approving notice by first class mail and email to FLSA collective); *Bland v. Pnc Bank, N.A.*, 2015 WL 7587365, at *3 (W.D. Pa. Nov. 25, 2015)(holding "Plaintiffs' counsel's plan to send the notice by email and U.S. Mail is reasonable.").

Sending notice by e-mail and text is an effective method of notifying the putative collective members of their rights in this action, particularly, in light of the fact that when an individual who has left the employ of Defendant moves, the physical address the Defendant has may no longer be an accurate address. In that circumstance, the *only* effective way to provide notice of this case to those collective members is to send them an email and text message

### 3. Electronic Signatures Should Be Accepted.

Federal courts throughout the United States "recogniz[e] that 'we live in a time when all manner of commercial transactions are routinely cemented by electronic submission" and "courts have approved the use of online, electronic signature opt-in forms." *Landry,* 252 F. Supp. 3d at 1130 (quoting *Mraz v. Aetna Life Ins. Co*., 2014 WL 5018862, at *5 (M.D. Pa. Oct. 7, 2014)); *see also Dyson v. Stuart Petroleum Testers, Inc*., 308 F.R.D. 510, 518 (W.D. Tex. 2015) (allowing electronic signatures, noting that the FLSA doesn't require a signature on consent forms, other courts have allowed same, and various state and federal laws require the court to honor electronic signatures); *White v. Integrated Elec. Techs., Inc.,* 2013 WL 2903070, at *9 (E.D. La. June13, 2013) (granting Plaintiffs' request to allow electronic execution of consent forms); *JGCWALTZ v. JGC Dallas LLC*, 2012 WL 6928101, at *8 (N.D. Tex. Nov. 29, 2012) (allowing option to execute consent forms online via electronic signature service). Moreover, electronic signatures cannot be deemed ineffective, because New Jersey's Uniform Electronic Transactions Act, N.J. Stat. §§ 12A:12-1 to -26, provides that "[a] record or signature may not be denied legal effect or enforceability solely because it is in electronic form. N.J. Stat. § 12A:12-7(a). Giving the collective this option is consistent with applicable law and with the FLSA's remedial nature, ensuring that those who wish to assert their FLSA rights may do so without unnecessary impediment.

### 4. Notice Should be Given Within A Three-Year Statute of Limitations Period.

Notice within a three-year statute of limitations period is appropriate in this case. The

FLSA allows a Plaintiff to collect damages within a three-year statute of limitations if it can be shown that a defendant's violation of the FLSA was "willful"—meaning that the "employer either knew, or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Whether violations of the FLSA were willful goes to the merits, and not whether notice should issue. *See Harris v. Performance Transp., LLC*, 2015 WL 1257404, *4 (M.D. Fla, March 18, 2015); *see also Robinson v. Sailormen, Inc.,* 2016 WL 11528450, at *3 (N.D. Fla. Nov. 18, 2016) (holding that because the applicable standard for conditional certification is a lenient one that "typically results in conditional certification being granted" the plaintiff's allegations that they were subject to a common, illegal pay scheme was sufficient to support a three-year statute of limitations for purposes of court-authorized notice). The facts concerning willfulness must be elicited during discovery, and Defendants may challenge the three-year statute of limitations again at an appropriate time. Thus, notice should go to all individuals who were employed by Defendants during the three-year period preceding the Court's ruling on the instant Motion. *See Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F.Supp.2d 937 (W.D. Ark. 2007).

### 5.   A Sixty (60) Day Opt-In Period And A Reminder Notice Are Appropriate.

Given the size of this collective, and Plaintiffs' counsel's experience with these types of FLSA collective actions, Plaintiffs request a 60-day notice period. *See Pearsall-Dineen*, 27 F. Supp. 3d at 573  (approving a 60-day opt-in period with a reminder notice halfway into the period); *Leap v. Yoshida*, 2015 WL 619908, at *11 (E.D. Pa. Feb. 12, 2015) (approving a 60-day opt-in period); *Thompson v. Peak Energy Servs. USA, Inc.*, 2013 WL 5511319, at *3 (W.D. Pa. Oct. 4, 2013) (approving 60-day opt-in period); and *Viscomi v. Clubhouse Diner*, 2016 WL 1255712, at *1 (E.D. Pa. Mar. 31, 2016) (approving 60-day opt-in period). *See also Covachuela v. Jersey*

*Firestop, LLC*, 2021 WL 1326985 (D.N.J. Apr. 9, 2021) (citing *Sanchez v. Santander Bank, N.A.*, 2019 WL 6050738, at *4 (D.N.J. Nov. 15, 2019) ("[Sixty days] is sufficient time to provide each potential collective action member the opportunity to make an informed decision about whether to opt into this action, while not needlessly delaying resolution of the litigation.")

"In addition, courts have found that reminder notice 'is a neutral communication that does recommend [collective] participation and is reasonable to distribute.'" *Weinmann*, 2023 WL 3881394, at *7 (*quoting Belt*, 2020 WL 3829026, at *9). As such, Plaintiffs request that the Court allow them to issue one reminder e-mail sent 30 days after the issuance of notice to any putative collective member who at that point has not yet responded to the notice, as same are regularly permitted. *Fogg v. Clean Harbors Environmental Servs., Inc.*, 2023 WL 1794836, at *7 (D.N.J. Feb. 7, 2023) ("Reminder notices are [ ] 'regularly permitted in this Circuit.'") (citing *Gilbertson v. J. Givoo Consultants I, Inc.*, 2021 WL 689114, at *2 (D.N.J. Feb. 23, 2021)). Email is also a good way to send follow-up reminders. *See Sanchez*, 2019 WL 6050738, at *3 ("[T]he Court will permit Plaintiff to both mail and email an initial notice. The Court will also permit a reminder notice to be sent by mail and email halfway through the notice period."); *Porter v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 2018 WL 5874094, at *5 (D.N.J. Nov. 9, 2018) (permitting reminder notice to be sent by mail and email halfway through the notice period); *see also Jones v. SCO, Silver Care Operations LLC*, 2015 WL 5567355, at *5-6 (D.N.J. Sept. 22, 2015) (approving reminder notice in order granting conditional certification of FLSA collective).

## IV.    CONCLUSION

For all the reasons set forth herein, Plaintiffs respectfully submit that the instant Motion is due to be granted. Plaintiffs have included a proposed order, attached hereto as **Exhibit 7**.

Respectfully submitted,

**ASH LAW, PLLC**
/s/ Charles R. Ash, IV
Charles R. Ash, IV (P73877) (*PHV*)
43000 W. 9 Mile Rd., Suite 301
Novi, MI 48375
Phone: (734) 234-5583
Email: cash@nationalwagelaw.com

**MORGAN & MORGAN, P.A.**
Andrew R. Frisch (N.J. Bar No. 038452000)
Angeli Murthy (FBN 0088758) (*PHV*)
8151 Peters Road, 4th Floor
Plantation, FL 33324
Phone: (954) WORKERS
Fax: (954) 327-3013
afrisch@forthepeople.com
amurthy@forthepeople.com

*Counsel for Plaintiffs and the*
*Putative Collective/Class Members*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on February 11, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.