**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KIMBERLY DOTSON, JENNIFER CONNOR, and AMANDA MCCONNELL,** ***individually, and on behalf of other similarly situated,*** <br><br> **Plaintiffs,** <br> **v.** <br><br> **TZ INSURANCE SOLUTIONS, LLC d/b/a TRANSACT,** <br><br> **Defendant.** | **Civil Action No. 25-13323 (BRM) (MAH)** <br><br> **OPINION** |

## I. INTRODUCTION

This matter comes before the Court on Plaintiffs' motion for conditional certification pursuant to 29 U.S.C. § 216(b), and to approve the proposed notice plan. D.E. 46. Plaintiffs seek to conditionally certify a collective consisting of "current and former hourly Sales Agents who worked for Defendant at any time from [date 3 years prior to Notice date] to present." Pls.' Proposed Form of Notice, D.E. 46-1, at 1.

TZ Insurance Solutions, LLC ("Defendant") opposes the motion. D.E. 63. Plaintiffs filed a reply in further support of their motion, and Defendant filed a sur-reply. D.Es. 67 & 71. The Court has reviewed the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b). *See also* L. Civ. R. 78.1(b). For the reasons set forth below and for good cause shown, Plaintiffs' motion is granted.

## II. BACKGROUND

This action arises out of Defendant's alleged failure to properly compensate Plaintiffs in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Am. Compl.

("FAC"), D.E. 26, ¶ 1. Kimberly Dotson, Jennifer Conner, and Amanda McConnell ("Plaintiffs") bring this action on behalf of themselves and other hourly insurance sales agents, whom Plaintiff characterizes as similarly situated ("Sales Agents"). *Id.* ¶ 4. Defendant operates in the business of direct-to-consumer insurance sales. *Id.* ¶¶ 2-3. Plaintiffs allege that Defendant supports its operations through the employment of thousands of Sales Agents across the country, a significant portion of whom work remotely or in hybrid arrangements. *Id.* ¶¶ 4, 22, 38-47. Plaintiffs further allege that the Sales Agents perform substantially similar job duties regardless of location, such as providing over-the-phone assistance to customers to help them select and enroll in insurance plans, handling primarily inbound calls, and using Defendant's computer systems to complete their work. *Id.* ¶ 49. Sales Agents are compensated at an hourly rate, and are also eligible to earn performance-based, non-discretionary bonuses. *Id.* ¶ 5.

Plaintiffs contend that Defendant utilizes company-wide practices that result in unpaid compensation. *Id.* ¶¶ 55, 72. Defendant compensates Sales Agents for computer startup and shutdown activities by adding a fixed 4.8 minutes of pay to each shift. *Id.* ¶¶ 57, 71. However, Plaintiffs allege that the 4.8 minutes does not accurately reflect the time it takes for Sales Agents to perform the tasks necessary to begin and end workdays. *Id.* ¶¶ 75-95. Plaintiffs contend Sales Agents are required to be "call-ready" at the start of their scheduled shifts, which allegedly requires them to complete a multi-step startup process before they can begin taking calls. *Id.* ¶¶ 75-81. Plaintiffs describe that process as turning on the computer, logging into Microsoft Windows, connecting to Defendant's private network, opening and logging into multiple work applications, checking work email, logging into the dialer, and then logging into the timekeeping system. *Id.* ¶ 78. Sales Agents cannot access the timekeeping system until they first complete other portions of that startup process. *Id.* Plaintiffs assert that this process generally takes ten to

fifteen minutes before the start of a shift. *Id.* ¶ 77. Plaintiffs further contend that additional time is required during the workday, including after unpaid meal periods and at the end of shifts, in connection with logging into and out of Defendant's systems. *Id.* ¶¶ 82-95. Overall, Plaintiffs contend Defendant's policies and practices generally fail to pay Sales Agents for no less than seventeen minutes per day of work performed in connection with the above off-the-clock work activities. *Id.* ¶ 96.

Plaintiffs also allege that Defendant promises bonuses to Sales Agents for reaching specific enrollment levels. *Id.* ¶¶ 102-139. But, Plaintiffs assert, the levels are a moving target. *Id.* Plaintiffs contend that as Sales Agents progress toward those goals, Defendant increases them and thereby prevents the Sales Agents from obtaining bonuses they otherwise would have earned. *Id.* Plaintiffs further allege Defendant regularly fails to pay Sales Agents all bonuses earned. In overtime weeks, this practice results in the Sales Agents being paid at a deficient overtime rate because such non-discretionary bonuses are not included in the regular rate of pay. *Id.*

Plaintiffs seek conditional certification of a collective pursuant to 29 U.S.C. § 216(b), and for the Court to approve their proposal to notify putative collective members via traditional mail, email, and text message. As noted above, Plaintiffs define the proposed collective as "current and former hourly Sales Agents who worked for Defendant at any time from [date 3 years prior to Notice date] to present." D.E. 46-1, at 1; *see also* Br. in Supp., D.E. 46, at 15. Plaintiffs contend that the proposed members of the collective are similarly situated because Defendant's inadequate and uniform compensation policy affected all Sales Agents during the relevant period. *Id*. at 3.

Defendant argues that the members of the proposed collective are not all similarly situated and do not meet the factual nexus required for certification of a collective. D.E. 63, at 1-2. Defendant contends the company policy of adding a calculated 4.8 minutes of pay is appropriate to compensate for preliminary tasks. *Id*. at 1.

The parties also differ as to the appropriate method of notice if the Court conditionally certifies a collective. Plaintiffs aver that the Court should require Defendant to produce the names, addresses, and telephone numbers for potential opt-ins, and notice should be provided via mail, email and text message. D.E. 46, at 24. Defendant posits that if the Court grants certification, it should limit notice to regular mail and email. D.E. 63, at 28-29.

## III. LEGAL STANDARD

The FLSA guarantees federal minimum wages, maximum hours, and overtime pay; these protections cannot be altered by private agreement. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Pursuant to section 207 of the FLSA, employers must pay overtime at one and one-half times an employee's regular rate for hours worked beyond forty per week. 29 U.S.C. § 207. The statute also confers a private right of action that allows employees to sue individually or collectively on behalf of other "similarly situated" workers. 29 U.S.C. § 216(b). Unlike a Rule 23 class action, however, the FLSA requires each potential member to affirmatively opt in by filing written consent with the court. *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242–43 (3d Cir. 2013) (citing 29 U.S.C. § 216(b)).

The Third Circuit uses a two-step framework to certify FLSA collective actions. *In re Citizens Bank, N.A.*, 15 F.4th 607, 611 (3d Cir. 2021); *Camesi*, 729 F.3d at 243. At the first step, conditional certification, the named plaintiff need make only a "modest factual showing," beyond mere speculation, of a factual nexus between how the employer's challenged policy

affected them and how it affected the proposed collective. *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) (quoting *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)). Courts look to both the pleadings and any supporting or opposing affidavits, and will deny certification where the evidentiary showing falls short. *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 570 (D.N.J. 2014); *Dreyer v. Altchem Env't Servs., Inc.*, No. 06-2393, 2007 WL 7186177, at *3 (D.N.J. Sept. 25, 2007). The factual-nexus standard is satisfied once plaintiffs identify who belongs to the potential collective and offer a basis for inferring that those members are similarly situated. *Fuentes v. Super Bread II Corp.*, No. 18-6736, 2020 WL 7237942, at *7 (D.N.J. Dec. 9, 2020).

If the plaintiff clears that bar, the court conditionally certifies the collective so that notice can be sent to potential opt-in plaintiffs and pretrial discovery can proceed. *Camesi*, 729 F.3d at 243. Conditional certification carries only one salient consequence: court-approved notice goes out to employees, who become parties only if they file written consent. *Genesis Healthcare*, 569 U.S. at 75. Whether to grant conditional certification remains within the court's discretion. *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 194 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013).

The second step generally occurs at the close of discovery. Here, the court must make a conclusive determination of whether each opt-in plaintiff is, in fact, similarly situated to the named plaintiff. *Id.* at 193. At this second step, the plaintiffs bear the burden of proving similarity by a preponderance of the evidence. *Zavala*, 691 F.3d at 537.

**IV. ANALYSIS**

Plaintiffs seek conditional certification to facilitate notice of the instant action to similarly situated individuals. Defendant opposes conditional certification, arguing that the claims are

individualized and cannot be determined on a collective action basis. In the alternative, Defendant requests certain modifications to Plaintiffs' proposed notice if conditional certification is granted. The Court addresses each issue in turn.

**A. Conditional Certification**

At this stage, the Court need determine merely whether Plaintiffs have shown there are other Sales Agents who have been denied compensation for work done off-the-clock, including overtime hours, and denied bonuses for reaching specified enrollment levels. This inquiry requires a modest amount of factual evidence "beyond mere speculation." *Symczyk*, 656 F.3d at 192-93.

Plaintiffs sufficiently demonstrate, via allegations and evidence, the requisite "modest factual showing" of a nexus between the impact of Defendant's policy on Plaintiffs and on the proposed collective class members. *Camesi*, 729 F.3d at 243. To start, Plaintiffs allege that "Defendant maintains a common plan and policy pursuant to which they fail to pay their Sales Agents for no less than seventeen (17) minutes per day of work performed during pre-shift time and during their lunch periods." FAC, D.E. 26, ¶ 69. Additionally, the declarations of the named Plaintiffs, Kimberly Dotson, Jennifer Connor, and Amanda McConnell attest that they and the other Sales Agents were not properly compensated for required work performed before clocking in and after clocking out.[1] Dotson Decl., D.E. 46-2, ¶¶ 5-21, 24-25; Connor Decl., D.E. 46-3, ¶¶ 5-21, 24-25; McConnell Decl., D.E. 46-4, ¶¶ 5-21, 24-25 (collectively, "The Declarations"). For example, Plaintiffs attest that:

[1] Since the filing of the Complaint in this action, three additional individuals have indicated that they seek to opt into this litigation. *See* D.Es. 9-1, 40-1, and 64-1. One of these individuals, Lori Kelly, has provided a declaration in support of this motion that is nearly identical to those of the named Plaintiffs in terms of its allegations concerning Defendant's compensation practices for the Sales Agents. *See* Kelly Decl., D.E. 46-5.

> To perform my job and be call-ready at the start of my scheduled shift, prior to the beginning of my scheduled shifts, I, along with all other Sales Agents, were required to complete the following tasks or tasks substantially similar before clocking in:
>
> a. Turn on and wait for my computer to bootup, then access the Microsoft Windows operating system with my username and password;
> b. Load, log-in, and connect to Defendants' virtual private network (VPN) that required a dual-authentication log-in process;
> c. Log-into CUY (to obtain leads);
> d. Load and Log-into Sunfire with username and password (to document calls);
> e. Log-into Microsoft Teams (to be on camera (as Defendant required) and to otherwise communicate with team members and supervisors);
> f. Open insurance carrier websites such as Humana, BCBS, United Health Care, and Kaiser Permanente;
> g. Log-into Outlook (email) and check emails with work instructions for the day;
> h. Load and Log-into Genesys (the dialer) with a username and password; and
> i. Log-into ADP (the time keeping system) and clock-in.

The Declarations, ¶ 10. They assert that these tasks could take upwards of fifteen (15) minutes each time or possibly longer if computers required updates or were working improperly. *Id.* ¶ 11. "As a result, Defendant maintains a plan and policy that applies to all Sales Agents, through which it generally failed to pay Sales Agents for no less than seventeen (17) minutes per day of work performed in connection with the above off-the-clock work activities. In most cases, this additional off-the-clock work was overtime." *Id.* ¶ 16.

Plaintiffs allege they and the other Sales Agents were subject to the same company-wide policies that prohibited them from reporting on their timesheets all of the time spent both booting up and shutting down the necessary computer systems. The Declarations, ¶ 7. Specifically, Plaintiffs contend that "[a]s a matter of policy and practice, Defendant outright prohibited us from reporting on our timecards all the time spent booting up and shutting down our essential

computer systems." *Id.* They also attest that all Sales Agents were instructed during training that the booting up and shutting down of computer systems "was akin to 'drive time' or 'commute time' to and from work for remote employees and that we were not supposed to be paid for that time." *Id.* Despite regularly working more than forty hours each week, Plaintiffs claim they and the other Sales Agents were not paid "routinely" for all overtime hours. *Id.* ¶¶ 5-6. As a result of these company-wide policies and practices, Plaintiffs contend that they and the other Sales Agents suffered the same harm because they regularly were not paid for all overtime owed to them. *Id.* ¶ 25. In particular, Plaintiffs attest that "[a]s a result of Defendant's policies, procedures, and practices, I was regularly not paid all overtime premiums owed to me." *Id.*

With respect to the alleged unpaid bonuses to the Sales Agents, Plaintiffs maintain that they and the other Sales Agents were subjected to the same company-wide policies and practices. Specifically, Plaintiffs aver that Defendant would move the goals necessary to obtain bonuses as Plaintiffs and the other Sales Agents progressively hit the target number of enrollments necessary to achieve a bonus. FAC, D.E. 26, ¶¶ 115-19. Additionally, the named Plaintiffs all attest that the Defendant's practice of shifting the goals denied them and the other Sales Agents the bonuses to which they were entitled. The Declarations, ¶¶ 22-23.

At bottom, evidence beyond pure speculation exists to support Plaintiffs' and the other Sales Agents' claims that they performed similar work for the same employer, were subject to the same policies and procedures, and suffered the same type of harm arising from the same alleged violation of the FLSA. At this first stage, Plaintiffs have made the requisite modest factual showing that they and the other Sales Agents are similarly situated employees by demonstrating a factual nexus common among plaintiffs. *See Camesi*, 729 F.3d at 243.

To the extent Defendant argues that Plaintiffs fail to provide evidence of a company-wide practice or policy that is unlawful, D.E. 63, at 12, 27, "[t]he court does not consider the merits of the dispute at this time, and the plaintiff must only demonstrate that the potential class members' positions are similar, not identical, to his own." *Steinberg v. TD Bank, N.A.*, No. 10-5600, 2012 WL 2500331, at *8 (D.N.J. June 27, 2012) (explaining that the question of individualized proofs is better suited for the second stage of certification). It is sufficient at this stage for Plaintiffs to show via pleadings and affidavits that they and the proposed collective endured the same scheme to warrant conditional certification. *Pearsall-Dineen*, 27 F. Supp. at 570 (evaluating a motion for conditional certification "generally requires review of both the pleadings and affidavits in support of or in opposition to the proposed collective"); *Bobryk v. Durand Glass Mfg. Co., Inc.*, 50 F. Supp. 3d 637, 642 (D.N.J. 2014) (conditionally certifying a collective based on "declarations attesting to procedures [plaintiffs] follow" for work-related activity taking place prior to and after their shifts). Although Defendant argues that Plaintiffs' claims are too individualized to adjudicate this action collectively, those individual differences are not relevant at this stage. *See Goodman v. Burlington Coat Factory*, No. 11-4395, 2012 WL 5944000, at *5-6 (D.N.J. Nov. 20, 2012) (denying defendant's request to consider individual differences among plaintiffs at the first stage because doing so "necessarily addresses the merits"). Accordingly, the Court grants Plaintiffs' request for conditional certification.

**B. Notice**

Having determined it appropriate to conditionally certify the collective, the Court must now consider the appropriate manner of notice. Plaintiffs request that the Court direct Defendant to produce names, addresses, and phone numbers for potential opt-in plaintiffs to facilitate

notice. D.E. 46, at 24. Plaintiffs argue that notice should be distributed by mail, email, and text message. *Id.* at 26. Plaintiffs also seek approval to send a reminder notice. *Id*. at 29.

Defendant objects to certain of Plaintiff's proposed notice procedures. D.E. 63, at 28-29. Defendant contends that regular mail and email are sufficient to notify opt-in plaintiffs and thus, the Court should only order release of employees' last known addresses, dates and location of employment, and email addresses. *Id*. at 28. Defendant also argues that a "reminder" notice is not necessary, arguing such notice would suggest endorsement of Plaintiffs' claims. *Id*. at 29. The Court addresses each issue in turn.

**i. Method of Notice**

Following a grant of conditional certification, courts have discretion to "oversee the notice-giving process." *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 174 (1989). In determining the appropriate scope of the notice, courts must balance the importance of notification to potential collective members with the potential prejudice to the defendant. *Steinberg*, 2012 WL 2500331, at *6. Courts have determined that providing notice via both regular and electronic mail is "an appropriate method of facilitating notice." *Sanchez v. Santander Bank, N.A.*, No. 17-5775, 2019 WL 6050738, at *3 (D.N.J. Nov. 15, 2019); *Pearsall-Dineen,* 27 F. Supp. 3d at 573 (finding notice to be sent by email and regular mail to potential plaintiff members is appropriate). When additional methods of notice are requested, plaintiffs are generally required to produce "compelling reasons to allow notice mechanisms beyond first class mail." *Steinberg*, 2012 WL 2500331, at *10. Courts within the Third Circuit have denied requests from plaintiffs to deliver notification via text message. *See Russo v. Gov't Emps. Ins. Co.*, No. 21-17234, 2022 WL 3098107, at *5 (D.N.J. Aug. 3, 2022) (finding that notice via text message was not necessary because notice via email and regular mail would be sufficient);

*Bellan v. Cap. BlueCross*, 496 F. Supp. 3d 854, 860 (M.D. Pa. 2020) (denying request for notification by text message to avoid "duplicative and unnecessary forms of notice"); *Ritzer v. UBS Fin. Servs.*, No. 08-1235, 2008 WL 4372784, at *4 (D.N.J. Sept. 22, 2008) ("Unless notification via first class mail proves insufficient, social security numbers and telephone numbers should not be released.").

The Court is not persuaded that Plaintiffs have offered any compelling reasons to authorize notice via text message. Plaintiffs speculate that physical addresses for potential opt-in plaintiffs might no longer be up to date, and maintain that electronic communication is the most effective manner of notice. D.E. 46, at 26-27. But the Court is satisfied that reasonable notice can be accomplished via notice by regular mail and email. *See Sanchez*, 2019 WL 6050738, at *3 (finding that providing notice via first class mail and email is sufficient to guarantee that potential opt-in plaintiffs receive notice of the action). Even if physical addresses have changed, email notice provides an adequate backstop to maximize the opportunity for those individuals to received notice. Because disseminating notice via regular and email is sufficient to inform potential collective members of their ability to opt-in, and Plaintiffs have provided no compelling reasons to allow additional notice via text message, the Court denies Plaintiffs' request to issue notice via text message as such would be "duplicative and unnecessary." *Bellan*, 496 F. Supp. 3d at 860.

**ii. Request for Reminder Notice**

Plaintiffs also request permission to send a reminder notice and Defendant opposes, arguing such notice would be prejudicial. D.E. 63, at 29. Courts routinely allow plaintiffs to send a reminder notice. *See Sanchez*, 2019 WL 6050738, at *3 (allowing a reminder notice but limiting such notice to be delivered via mail and email); *Porter v. Merrill Lynch Pierce Fenner &*

*Smith, Inc.*, No. 17-8043, 2018 WL 5874094, at *5 (D.N.J. Nov. 9, 2018) (allowing a reminder notification halfway through the notice period). Defendant's argument that a reminder notice would somehow indicate the Court's endorsement of Plaintiffs' claims is not persuasive. A reminder notice is a "neutral communication that does [not] recommend [collective] participation and is reasonable to distribute." *Weinmann v. Cont. Land Staff, LLC*, No. 22-1140, 2023 WL 3881394, at *7 (W.D. Pa. June 8, 2023) (second alteration in original) (quoting *Belt v. P.F. Chang's China Bistro, Inc.*, No. 18-3831, 2020 WL 3829026, at *9 (E.D. Pa. July 8, 2020) (permitting a reminder notice with the goal of reaching potential opt-in plaintiffs who did not receive, forgot about, or misplaced the initial notice, thus increasing the likelihood that notice has been received)). A reminder letter that does not contain judicial endorsement is a neutral mechanism that facilitates notice. *See Belt*, 2020 WL 3829026, at *9. Accordingly, Plaintiffs are authorized to send a reminder notice halfway through the notice period, in a manner limited only to regular and electronic mail.[2]

---

[2] Plaintiff makes three additional requests concerning notice to which Defendant does not appear to object. Plaintiffs request: (1) the electronic execution of consent forms; (2) that notice be sent to "all individuals who were employed by Defendants during the three-year period preceding the Court's ruling on [this] motion.;" and (3) a sixty (60) day opt in period. These requests are all standard and reasonable. *See*, *e.g.*, *Mraz v. Aetna Life Ins. Co.*, No. 12-805, 2014 WL 5018862, at *5 (M.D. Pa. Oct. 7, 2014) (noting that electronic submissions and signatures have been routinely accepted by federal courts); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988) (explaining that while a two-year period is typical, a three-year period is used for willful violations); *Persall-Dineen*, 27 F. Supp. 3d at 575 (granting a plaintiff's request for a sixty-day notice period); *see also Sanchez*, 2019 WL 6050738, at *3 (finding sixty days is "sufficient time to provide each potential collective action member the opportunity to make an informed decision" without causing unnecessary delay). Accordingly, the Court grants Plaintiffs' requests.

Defendant requests that the Court direct the parties to meet and confer on the appropriate language for the notice. The Court also grants this request. *See Kaynaroglu v. Avis Budget Grp., Inc.*, 773 F. Supp. 3d 169, 196 (D.N.J. 2025) (ordering parties to meet and confer following conditional certification to discuss the language of the notice).

## V. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for conditional certification and notice to putative class members, D.E. 46, is **GRANTED**. An appropriate Order will issue.

***/s/ Michael A. Hammer*__________**
**United States Magistrate Judge**

Dated: July 29, 2026